ORAL ARGUMENT NOT YET SCHEDULED

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 22-3068**

---

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**SALUSTHIAN LUTAMILA,**
*Defendant-Appellant.*

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**APPENDIX FOR APPELLANT**

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

ISRA J. BHATTY
Asst. Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC 20004
(202) 208-7500
Isra_Bhatty@fd.org

District Court
Cr. No. 20-24 (JEB)

# Appendix

# Table of Contents

Docket ......................................................................................................... 1

Complaint (09/24/19) ............................................................................. 26

Indictment (01/29/20) ............................................................................ 34

Government's Sentencing Memorandum (09/13/22) ............................. 42

Defendant's Sentencing Memorandum (09/14/22).................................56

Government's Supplemental Sentencing Memorandum (09/16/22) ...... 86

Order of Forfeiture (09/16/22) ............................................................... 90

Defendant's Supplemental Sentencing Memorandum (09/16/22).......... 93

Judgment (09/19/22)................................................................................ 98

Notice of Appeal (09/22/22) ................................................................. 112

Sentencing Transcript – (09/16/22)...................................................... 113

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:20–cr–00024–JEB All Defendants

Case title: USA v. LUTAMILA

Magistrate judge case number: 1:19–mj–00236–RMM

Date Filed: 01/29/2020

Assigned to: Chief Judge James E. Boasberg

Appeals court case number: 22–3068

**Defendant (1)**

| | | |
|---|---|---|
| **SALUSTHIAN LUTAMILA** | represented by | **Caroline P. Malone** |

**SALUSTHIAN LUTAMILA**
*also known as*
SALLU LUTAMILA
*also known as*
LUTAMILA SALLU WAISO

represented by **Caroline P. Malone**
ELMER STAHL LLP
244 South Michigan Avenue
Suite 1100
Chicago, IL 60604
312–660–7600
Email: cmalone@eimerstahl.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Sarah Catalano**
ELMER STAHL LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604
312–660–7647
Email: scatalano@eimerstahl.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Ubong E. Akpan**
FEDERAL PUBLIC DEFENDER FOR THE
DISTRICT OF COLUMBIA
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208–7500
Fax: (202) 208–7515
Email: ubong_akpan@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community
Defender Appointment*

**Ryan J. Walsh**
EIMER STAHL LLP
10 East Doty Street
Suite 621
Madison, WI 53703
608–620–8346

Fax: 312−692−1718
Email: rwalsh@eimerstahl.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Tony Lenell Axam**
FEDERAL PUBLIC DEFENDER FOR D.C.
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208−7500
Fax: (202) 208−7515
Email: tony_axam@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

| Pending Counts | Disposition |
|---|---|
| 18:1344(1); BANK FRAUD; Bank Fraud (1) | Defendant sentenced to forty−four (44) months incarceration, thirty−six (36) months Supervised Released, Restitution in the amount of 76,069.63, and a $100 Special Assessment on each count to run concurrently. |
| 18:657; LENDING, CREDIT AND INSURANCE INSTITUTION; Theft by Credit Union Employee (2−8) | Defendant sentenced to forty−four (44) months incarceration, thirty−six (36) months Supervised Released, Restitution in the amount of 76,069.63, and a $100 Special Assessment on each count to run concurrently. |
| 18:1343; FRAUD BY WIRE, RADIO, OR TELEVISION; Wire Fraud (9−15) | Defendant sentenced to forty−four (44) months incarceration, thirty−six (36) months Supervised Released, Restitution in the amount of 76,069.63, and a $100 Special Assessment on each count to run concurrently. |
| 18:1957; ENGAGING IN MONETARY TRANSACTIONS; Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity (16−21) | Defendant sentenced to forty−four (44) months incarceration, thirty−six (36) months Supervised Released, Restitution in the amount of 76,069.63, and a $100 Special Assessment on each count to run concurrently. |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| Complaints | Disposition |
|---|---|
| COMPLAINT in violation of 18:1343 | Defendant sentenced to forty−four (44) months incarceration, thirty−six (36) months Supervised Released, and a $100 Special Assessment on each count to run concurrently. |

**Movant**

**IDB GLOBAL FEDERAL CREDIT UNION**

---

**Plaintiff**

**USA**

represented by **Melissa Joy Jackson**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20530
202–252–7786
Email: melissa.jackson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Peter C. Lallas**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–6879
Email: lallasp@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Janani Iyengar**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
Criminal Division
555 4th Street NW
Washington, DC 20530
(202) 252–7760
Email: janani.iyengar@usdoj.gov
*TERMINATED: 04/27/2021*
*Designation: Assistant U.S. Attorney*

**Nicholas George Miranda**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7011
Email: Nicholas.Miranda@usdoj.gov
*TERMINATED: 06/01/2021*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/24/2019 | 1 | SEALED COMPLAINT as to SALUSTHIAN LUTAMILA (1). (Attachments: # 1 Affidavit) (zef, ) [1:19–mj–00236–RMM] (Entered: 09/24/2019) |
| 09/24/2019 | 2 | MOTION to Seal Case by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(zef, ) [1:19–mj–00236–RMM] (Entered: 09/24/2019) |
| 09/24/2019 | 3 | ORDER granting 2 Motion to Seal Case as to SALUSTHIAN LUTAMILA (1). Signed by Magistrate Judge Robin M. Meriweather on 9/24/2019. (zef, ) [1:19–mj–00236–RMM] (Entered: 09/24/2019) |
| 10/02/2019 | 4 | PRETRIAL SERVICES REPORT as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested.(Robinson, Takeysha) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |

| 10/02/2019 | | Arrest of SALUSTHIAN LUTAMILA. (ztl) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |
|---|---|---|
| 10/02/2019 | 5 | Arrest Warrant Returned Executed on 10/2/19 as to SALUSTHIAN LUTAMILA. (ztl) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |
| 10/02/2019 | 6 | ORDER Setting Conditions of Release as to SALUSTHIAN LUTAMILA (1) Personal Recognizance. Signed by Magistrate Judge Deborah A. Robinson on 10/2/19. (Attachments: # 1 Appearance Bond) (ztl) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |
| 10/02/2019 | | ORAL MOTION to Unseal Case by USA as to SALUSTHIAN LUTAMILA. (ztl) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |
| 10/02/2019 | | ORAL MOTION for Speedy Trial by USA as to SALUSTHIAN LUTAMILA. (ztl) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |
| 10/02/2019 | | ORAL MOTION to Appoint Counsel by SALUSTHIAN LUTAMILA. (ztl) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |
| 10/02/2019 | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Initial Appearance as to SALUSTHIAN LUTAMILA held on 10/2/2019. Government was not opposed to Defendant's Release. Oral Motion to Appoint Counsel by SALUSTHIAN LUTAMILA (1; heard and granted. Oral Motion by the Government to Unseal Case was heard and granted. Oral Motion by the Government for Speedy Trial Waiver as to SALUSTHIAN LUTAMILA (1); heard and denied. Status/Preliminary Hearing set for 10/21/2019 at 01:45 PM in Courtroom 6 before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Remains on Personal Recognizance/Release Issued; Court Reporter: FTR–Gold;FTR Time Frame: Ctrm 4 [1:34:47–1:54:42]; Defense Attorney: Ubong Akpan; US Attorney: Peter Lallas; Pretrial Officer: Masharia Holman. (ztl) [1:19–mj–00236–RMM] (Entered: 10/02/2019) |
| 10/02/2019 | | Case unsealed as to SALUSTHIAN LUTAMILA. (zed, ) [1:19–mj–00236–RMM] (Entered: 10/03/2019) |
| 10/15/2019 | 8 | Consent MOTION to Continue *Preliminary Hearing* by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) [1:19–mj–00236–RMM] (Entered: 10/15/2019) |
| 10/15/2019 | 9 | MOTION to Exclude *Speedy Trial Time* by USA as to SALUSTHIAN LUTAMILA. (See Docket Entry 8 to view document). (znmw) [1:19–mj–00236–RMM] (Entered: 10/16/2019) |
| 10/18/2019 | 10 | PRETRIAL SERVICES REPORT as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) [1:19–mj–00236–RMM] (Entered: 10/18/2019) |
| 10/18/2019 | 11 | ORDER granting 8 , 9 Government's Consent Motion to Continue Preliminary Hearing and Exclude Time Under Speedy Trial Act as to SALUSTHIAN LUTAMILA; Continuing Preliminary Hearing set for October 21, 2019 to November 20, 2019 at 01:45 PM in Courtroom 6 before Magistrate Judge G. Michael Harvey; Excluding Time from 10/21/19 to 11/20/2019 for purposes of any computation under the Speedy Trial Act; Signed by Magistrate Judge Robin M. Meriweather on 10/18/19. (ztl) [1:19–mj–00236–RMM] (Entered: 10/18/2019) |
| 11/12/2019 | 12 | Unopposed MOTION for Protective Order by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) [1:19–mj–00236–RMM] (Entered: 11/12/2019) |
| 11/13/2019 | 13 | PROTECTIVE ORDER GOVERNING DISCOVERY setting forth procedures for handling confidential material; allowing designated material to be filed under seal as to SALUSTHIAN LUTAMILA. Signed by Magistrate Judge G. Michael Harvey on 11/13/19. (zldc) [1:19–mj–00236–RMM] (Entered: 11/13/2019) |
| 11/18/2019 | 14 | PRETRIAL SERVICES REPORT as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) [1:19–mj–00236–RMM] (Entered: 11/18/2019) |

| | | |
|---|---|---|
| 11/20/2019 | 15 | ORDER TO CONTINUE – Ends of Justice as to SALUSTHIAN LUTAMILA. Time excluded from 11/21/19 until 12/19/19. Signed by Magistrate Judge G. Michael Harvey on 11/20/19. (zldc) (Main Document 15 replaced on 11/20/2019) (zldc). [1:19–mj–00236–RMM] (Entered: 11/20/2019) |
| 11/20/2019 | | JOINT ORAL MOTION to Continue Preliminary Hearing and JOINT ORAL MOTION for Speedy Trial Waiver by SALUSTHIAN LUTAMILA. (zldc) [1:19–mj–00236–RMM] (Entered: 11/20/2019) |
| 11/20/2019 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: Status Hearing as to SALUSTHIAN LUTAMILA held on 11/20/2019. Parties continue to discuss a Plea Agreement. Joint Oral Motion to Continue Preliminary Hearing and Joint Oral Motion for Speedy Trial Waiver excluding time from 11/20/19 to 12/19/19 (31 Days) in the Interest of Justice X–T as to SALUSTHIAN LUTAMILA (1); Heard and Granted. Preliminary Hearing continued to 12/19/2019 at 01:45 PM in Courtroom 7 before Magistrate Judge Robin M. Meriweather. Bond Status of Defendant: Remains on Personal Recognizance; Court Reporter: FTR – Gold FTR Time Frame: Ctrm 6 [2:01:36–2:05:38]; Defense Attorney: Ubong Akpan; US Attorney: Peter Llamas; Pretrial Officer: Masharia Holman; (zldc) [1:19–mj–00236–RMM] (Entered: 11/20/2019) |
| 12/06/2019 | 16 | Consent MOTION to Continue *Preliminary Hearing* by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) [1:19–mj–00236–RMM] (Entered: 12/06/2019) |
| 12/06/2019 | 17 | MOTION to Exclude by USA as to SALUSTHIAN LUTAMILA. (See ECF docket entry No. 16 to view document). (zed, ) [1:19–mj–00236–RMM] (Entered: 12/09/2019) |
| 12/18/2019 | 18 | ORDER granting 16 , 17 Consent Motion by USA to Continue Preliminary Hearing and Exclude Time Under Speedy Trial Act as to SALUSTHIAN LUTAMILA; continuing the Preliminary Hearing currently scheduled for 12/19/19 until 1/30/20 at 2:00 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson; excluding the period between 12/19/19 and 1/30/20 from the computation of time under the Speedy Trial Act, in the interest of justice; signed by Magistrate Judge Robin M. Meriweather on 12/18/19. (kk)[1:19–mj–00236–RMM] (Entered: 12/19/2019) |
| 01/29/2020 | 20 | INDICTMENT as to SALUSTHIAN LUTAMILA (1) count(s) 1, 2–8, 9–15, 16–21. (FORFEITURE ALLEGATION) (zed, ) (Main Document 20 replaced on 9/29/2021) (zstd). (Entered: 01/30/2020) |
| 01/30/2020 | 19 | PRETRIAL SERVICES REPORT as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) [1:19–mj–00236–RMM] (Entered: 01/30/2020) |
| 01/30/2020 | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Arraignment as to SALUSTHIAN LUTAMILA (1) held on 1/30/2020 as to Counts 1,2–8,9–15,16–21. Plea of Not Guilty entered as to SALUSTHIAN LUTAMILA as to all counts. Defendant given return to court notice. Status Conference set for 2/4/2020 at 10:30 AM in Courtroom 25 before Judge James E. Boasberg. Bond Status of Defendant: Remains on Personal Recognizance; Court Reporter: FTR–Gold; FTR Time Frame: Ctrm 4: [2:58:41–2:03:00]; Defense Attorney: Ubong Akpan; US Attorney: Peter Lallas; Pretrial Officer: Christine Schuck. (ztl) (Entered: 01/31/2020) |
| 01/31/2020 | 21 | NOTICE *of Filing Discovery Letters* by USA as to SALUSTHIAN LUTAMILA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Lallas, Peter) (Entered: 01/31/2020) |
| 02/03/2020 | | Set/Reset Hearings as to SALUSTHIAN LUTAMILA:Status Conference set for 2/4/2020 at 10:30 AM in Courtroom 25A before Judge James E. Boasberg. (nbn) (Entered: 02/03/2020) |
| 02/04/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference as to SALUSTHIAN LUTAMILA (1) held on 2/4/2020. The Court finds that the period from February 4, 2020 through March 30, 2020, inclusive, is excluded from the Speedy Trial calculation in the Interest of Justice (XT). Excludable started as to SALUSTHIAN LUTAMILA (1). Status Conference set for 3/30/2020 at 10:00 AM |

| | | |
|---|---|---|
| | | before Judge James E. Boasberg. Bond Status of Defendant: remains on PERSONAL RECOGNIZANCE BOND (PR); Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan; US Attorney: Peter Lallas and Jahani Iyengar. (nbn) (Entered: 02/05/2020) |
| 02/04/2020 | 22 | NOTICE OF HEARING as to SALUSTHIAN LUTAMILA (1): Status Conference set for 3/30/2020 at 10:00 AM in Courtroom 25A before Judge James E. Boasberg. (nbn) (Entered: 02/05/2020) |
| 03/17/2020 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): Given the Chief Judge's Order relating to the coronavirus, the Court ORDERS that the hearing in this matter set for 3/30/202 at 10:00 AM is VACATED and RESET for 4/21/2020 at 10:30 AM in Courtroom 25A before Judge James E. Boasberg. It is further ORDERED that the period from March 17, 2020 through April 21, 2020, inclusive, is excluded from the Speedy Trial calculation in the Interest of Justice (XT). So ORDERED by Judge James E. Boasberg on 3/17/20. (nbn) (Entered: 03/17/2020) |
| 04/14/2020 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): Pursuant to Standing Order No. 20–19 issued by Chief Judge Howell on April 2, 2020, the hearing scheduled for 4/21/2020 at 10:30 AM is VACATED and RESET for 6/2/2020 at 10:30 AM in Courtroom 25A before Judge James E. Boasberg. It is further ORDERED that the period from April 14, 2020 through June 3, 2020, inclusive, is excluded from the Speedy Trial calculation in the Interest of Justice (XT). So ORDERED by Judge James E. Boasberg on 4/14/20. (nbn) (Entered: 04/14/2020) |
| 06/02/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference as to SALUSTHIAN LUTAMILA (1) held on 6/2/2020. The Court finds that the period from June 2, 2020 through July 15, 2020, inclusive, is excluded from the Speedy Trial calculation in the Interest of Justice (XT). Excludable started as to SALUSTHIAN LUTAMILA (1). A further Status Conference is set for 7/15/2020 at 10:30 AM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance Bond (PR)/appeared telephonically; Court Reporter: Lisa Griffith; Defense Attorney: Eugene Ohm for Ubong Akpan; US Attorney: Peter Lallas and Jahani Iyengar. (nbn) (Entered: 06/02/2020) |
| 07/13/2020 | 23 | NOTICE of Filing Discovery Letters by USA as to SALUSTHIAN LUTAMILA (Attachments: # 1 Exhibit, # 2 Exhibit)(Lallas, Peter) (Entered: 07/13/2020) |
| 07/13/2020 | 24 | NOTICE OF ATTORNEY APPEARANCE Janani Iyengar appearing for USA. (Iyengar, Janani) (Entered: 07/13/2020) |
| 07/15/2020 | 25 | PRETRIAL SERVICES REPORT as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested.(Copes, John) (Entered: 07/15/2020) |
| 07/15/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference as to SALUSTHIAN LUTAMILA (1) held on 7/15/2020. The Court finds that the period from July 15, 2020 through August 17, 2020, inclusive, is excluded from the Speedy Trial calculation in the Interest of Justice (XT). Excludable started as to SALUSTHIAN LUTAMILA (1). Status Conference set for 8/17/2020 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance Bond (PR); Court Reporter: Lisa Griffith; Defense Attorney: Ubong E. Akpan; US Attorney: Janani Iyengar and Peter Lallas. (nbn) (Entered: 07/15/2020) |
| 08/10/2020 | 26 | NOTICE OF COURTROOM TIME CHANGE in case as to SALUSTHIAN LUTAMILA (1)Status Conference set for 8/17/2020 at 11:30 AM in Telephonic/VTC before Judge James E. Boasberg. (znbn) (Entered: 08/10/2020) |
| 08/14/2020 | 27 | PRETRIAL SERVICES REPORT as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 08/14/2020) |
| 08/17/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference as to SALUSTHIAN LUTAMILA (1) held on 8/17/2020. The Court finds that the period from August, 2020 through February 8, 2021, inclusive, is excluded from the Speedy Trial calculation in the Interest of Justice (XT). Excludable started as to |

| | | SALUSTHIAN LUTAMILA (1). Motion in Limine due by 11/30/2020. Opposition due by 12/14/2020. Reply due by 12/28/2020. Jury Selection/Jury Trial set for 2/8/2021 at 09:30 AM in Courtroom 25A before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance; Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan; US Attorney: Peter Lallas and Janani Iyengar. (nbn) (Entered: 08/17/2020) |
|---|---|---|
| 09/04/2020 | 28 | MOTION to Quash by USA as to SALUSTHIAN LUTAMILA. (Iyengar, Janani) (Entered: 09/04/2020) |
| 09/15/2020 | 29 | Memorandum in Opposition by SALUSTHIAN LUTAMILA re 28 MOTION to Quash *Early−Return Trial Subpoenas* (Akpan, Ubong) (Entered: 09/15/2020) |
| 09/15/2020 | 30 | MOTION to Enforce Subpoena re 29 Memorandum in Opposition by SALUSTHIAN LUTAMILA.(See 29 to view document). (bb) (Entered: 09/28/2020) |
| 10/15/2020 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that the parties are to appear via video for oral argument re [28,30] MOTION to Quash and MOTION to Enforce Subpoena on October 19, 2020 at 11:00 AM in VTC before Judge James E. Boasberg. So ORDERED by Judge James E. Boasberg on 10/15/20. (znbn) (Entered: 10/15/2020) |
| 10/19/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Motion Hearing as to SALUSTHIAN LUTAMILA (1) held on 10/19/2020 re 28 MOTION to Quash filed by USA, 30 MOTION Enforce Subpoena re 29 Memorandum in Opposition filed by SALUSTHIAN LUTAMILA. Order forthcoming. Bond Status of Defendant: remains on Personal Recognizance; Court Reporter: Lisa Griffith; Defense Attorney: Ubong E. Akpan; US Attorney: Janani Iyengar and Peter C. Lallas. (nbn) (Entered: 10/19/2020) |
| 10/19/2020 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): As discussed in todays hearing, the Court ORDERS that: 1) The Governments 28 Motion to Quash is GRANTED WITHOUT PREJUDICE to a renewed defense subpoena request, which may be submitted ex parte to the Court and which shall include a basis for issuance; and 2) Defendants 30 Motion to Enforce is DENIED WITHOUT PREJUDICE. So ORDERED by Judge James E. Boasberg on 10/19/2020. (znbn) (Entered: 10/19/2020) |
| 10/29/2020 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): Pursuant to the Due Process Protections Act, the Court ORDERS that all government counsel shall review their disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, as set forth in Local Criminal Rule 5.1, and comply with those provisions. The failure to comply could result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, continuances, Bar discipline, or any other remedy that is just under the circumstances. So ORDERED by Judge James E. Boasberg on 10/29/2020. (znbn) (Entered: 10/29/2020) |
| 12/16/2020 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): After discussions with the parties, the Court ORDERS that the parties appear via audio for a Status Conference on 12/17/2020 at 09:30 AM in Telephonic/VTC before Judge James E. Boasberg. So ORDERED by Judge James E. Boasberg on 12/16/2020. (nbn) (Entered: 12/16/2020) |
| 12/17/2020 | 33 | PRETRIAL SERVICES REPORT as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 12/17/2020) |
| 12/17/2020 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference as to SALUSTHIAN LUTAMILA (1) held on 12/17/2020. After discussions with the parties, the Court ORDERS that the Jury Selection/Jury Trial set for 2/8/2021 at 09:30 AM is VACATED and RESET to 5/10/2021 at 09:30 AM in Courtroom 25A before Judge James E. Boasberg. Pretrial Conference set for 4/28/2021 at 11:00 AM before Judge James E. Boasberg. The Court FURTHER ORDERS that the period from December 17, 2020 through May 10, 2021, inclusive, will continue to be excluded from the Speedy Trial calculation in the Interest of Justice (XT). Excludable started as to SALUSTHIAN LUTAMILA(1). Bond Status of Defendant: remains on PERSONAL RECOGNIZANCE BOND (PR)/appeared via audio teleconference; Court Reporter: Lisa Griffith; Defense Attorney: Ubong E. Akpan; US Attorney: Nicholas Miranda and Peter Lallas. (nbn) (Entered: 12/17/2020) |

| 01/08/2021 | 34 | Unopposed MOTION to Continue *Reschedule Trial* by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) Modified relief on 1/25/2021 (znmw). (Entered: 01/08/2021) |
|---|---|---|
| 01/08/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that 34 Unopposed MOTION to Reschedule Trial by USA, is GRANTED. It is FURTHER ORDERED that the parties contact the Courtroom Deputy for scheduling. So ORDERED by Judge James E. Boasberg on 1/8/2021. (nbn) (Entered: 01/08/2021) |
| 01/15/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): After discussions with the parties the Court ORDERS Jury Selection/Jury Trial will commence on June 21, 2021 at 09:30 AM in Courtroom 25A before Judge James E. Boasberg. So ORDERED by Judge James E. Boasberg on 1/15/2021. (nbn) (Entered: 01/15/2021) |
| 04/27/2021 | 35 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 04/27/2021) |
| 04/27/2021 | 36 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Miranda, Nicholas George added. (Miranda, Nicholas) (Entered: 04/27/2021) |
| 04/28/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: Pretrial Conference as to SALUSTHIAN LUTAMILA (1) held on 4/28/2021. Oral motion by defense to "Withdraw as Counsel", HEARD and HELD IN ABEYANCE. A Status Conference is set for 5/6/2021 at 12:00 PM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on PERSONAL RECOGNIZANCE BOND (PR)appeared via video; Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan; US Attorney: Peter Lallas and Nicholas Miranda; Pretrial Officer: John Copes. (nbn) (Entered: 04/28/2021) |
| 05/04/2021 | 37 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 05/04/2021) |
| 05/06/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference as to SALUSTHIAN LUTAMILA (1) held on 5/6/2021. After discussions with Defense Counsel, the previous Oral Motion to To "Withdraw as Counsel" is WITHDRAWN. Oral Motion by Defense Counsel to "Continue Jury Selection/Jury Trial", HEARD and GRANTED. The Court ORDERS that the Jury Selection/Jury Trial set for 5/10/2021 at 09:30 AM is VACATED and RESET to 7/26/2021 at 09:30 AM in (a courtroom will be determined at a later date). Pretrial Conference is set for 6/24/2021 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on PERSONAL RECOGNIZANCE BOND (PR)/appeared via video; Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan; US Attorney: Peter Lallas and Nicholas Miranda. (nbn) (Entered: 05/06/2021) |
| 05/21/2021 | 40 | Notice of Appearance by Ryan Walsh on behalf of SALUSTHIAN LUTAMILA (Walsh, Ryan) Modified text on 5/24/2021 (zstd). (Entered: 05/21/2021) |
| 05/21/2021 | 41 | MOTION for Leave to Appear Pro Hac Vice Caroline Malone Filing fee $ 100, receipt number ADCDC−8469292. Fee Status: Fee Paid. by SALUSTHIAN LUTAMILA. (Attachments: # 1 Declaration of C. Malone, # 2 Proposed Order)(Walsh, Ryan) (Entered: 05/21/2021) |
| 05/21/2021 | 42 | MOTION for Leave to Appear Pro Hac Vice Sarah Catalano Filing fee $ 100, receipt number ADCDC−8469373. Fee Status: Fee Paid. by SALUSTHIAN LUTAMILA. (Attachments: # 1 Declaration of S.Catalano, # 2 Proposed Order)(Walsh, Ryan) (Entered: 05/21/2021) |
| 05/21/2021 | | MINUTE ORDER GRANTING 41 Motion for Admission *Pro Hac Vice* of CAROLINE P. MALONE. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a). Click for Instructions. So ORDERED by Judge James E. Boasberg on 5/21/2021. (lcjeb1) (Entered: 05/21/2021)** |
| 05/21/2021 | | MINUTE ORDER GRANTING 42 Motion for Admission *Pro Hac Vice* of SARAH H. CATALANO. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for Instructions. <b. So ORDERED |

| | | by Judge James E. Boasberg on 5/21/2021. (lcjeb1) Modified on 5/25/2021 (lsj). (Entered: 05/21/2021) |
|---|---|---|
| 05/28/2021 | 43 | Notice of Appearance by Sarah Catalano on behalf of SALUSTHIAN LUTAMILA (Catalano, Sarah) Modified text on 5/28/2021 (zstd). (Entered: 05/28/2021) |
| 05/28/2021 | 44 | NOTICE of Appearance by Caroline P. Malone on behalf of SALUSTHIAN LUTAMILA (Malone, Caroline) Modified text on 5/28/2021 (zstd). (Entered: 05/28/2021) |
| 06/01/2021 | 45 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Jackson, Melissa Joy added. Substituting for attorney Nicholas Miranda (Jackson, Melissa) (Entered: 06/01/2021) |
| 06/07/2021 | 46 | ENTERED IN ERROR.....Unopposed MOTION for Disclosure *of Grand Jury and Sealed Materials* by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) Modified on 6/7/2021 (zstd). (Entered: 06/07/2021) |
| 06/07/2021 | | NOTICE OF CORRECTED DOCKET ENTRY: as to SALUSTHIAN LUTAMILA re 46 Unopposed MOTION for Disclosure *of Grand Jury and Sealed Materials* was entered in error and counsel was instructed to refile said pleading. The motion has the incorrect case number. (zstd) (Entered: 06/07/2021) |
| 06/07/2021 | 47 | Unopposed MOTION for Disclosure *of Grand Jury and Sealed Materials* by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) (Entered: 06/07/2021) |
| 06/07/2021 | 52 | WRITTEN RESPONSE by IDB GLOBAL FEDERAL CREDIT UNION as to SALUSTHIAN LUTAMILA re 39 Court Order to Produce Documents in Response to Defendant Lutamila's Subpoena, Request # 3. "Leave to File Granted" by Judge James E. Boasberg on 6/7/2021 (Attachments: # 1 Exhibit 1–3, # 2 Certificate of Service)(zstd) (Entered: 06/28/2021) |
| 06/10/2021 | 48 | Unopposed MOTION to Continue *Reschedule Trial* by SALUSTHIAN LUTAMILA. (Attachments: # 1 Proposed Order)(Walsh, Ryan) (Entered: 06/10/2021) |
| 06/10/2021 | 49 | MOTION to Exclude Time Under The Speedy Trial Act by SALUSTHIAN LUTAMILA. (See docket entry [48 to view document]. (zstd) (Entered: 06/11/2021) |
| 06/11/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA: The parties are directed to appear for a Status Conference set for 6/17/2021 at 2:30 PM by VTC before Judge James E. Boasberg to discuss Unopposed Motion 48 to Reschedule Trial. Video connection information will be emailed to the parties. SO ORDERED by Judge James E. Boasberg on 6/11/21. (lsj) (Entered: 06/11/2021) |
| 06/17/2021 | 50 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 06/17/2021) |
| 06/17/2021 | 51 | ORDER granting 47 Motion for Disclosure as to SALUSTHIAN LUTAMILA (1). Signed by Judge James E. Boasberg on 6/17/2021. (nbn) (Entered: 06/17/2021) |
| 06/17/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference as to SALUSTHIAN LUTAMILA (1) held on 6/17/2021. The Court ORDERS that 48 Unopposed MOTION to Continue/Reschedule Trial is GRANTED. Jury Selection/Trial set for 7/26/2021 at 09:30 AM is VACATED and RESET to 11/8/2021 at 09:30 AM in A courtroom will be determined at a later date before Judge James E. Boasberg. The Court FURTHER ORDERS the Pretrial Conference set for 6/24/2021 at 11:00 AM is VACATED and RESET to 10/15/2021 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. The Court also finds that the period from June 17, 2021 through November 8, 2021, inclusive, will continue to be excluded from the Speedy Trial calculation in the Interest of Justice (XT). Excludable started as to SALUSTHIAN LUTAMILA (1). Bond Status of Defendant: remains on Personal Recognizance Bond (PR)/appeared via video; Court Reporter: Lisa Griffith; Defense Attorney: Caroline Malone, Sarah Catalano, and Ryan Walsh; US Attorney: Melissa Jackson and Peter Lallas. (nbn) (Entered: 06/17/2021) |

| 09/30/2021 | 53 | NOTICE *OF FILING DISCOVERY LETTERS* by USA as to SALUSTHIAN LUTAMILA (Attachments: # 1 Exhibit Production 6 Letter, # 2 Exhibit Production 7 Letter, # 3 Exhibit Production 8 Letter, # 4 Exhibit Production 9 Letter, # 5 Exhibit Production 10 Letter, # 6 Exhibit Production 11 Letter)(Lallas, Peter) (Entered: 09/30/2021) |
|---|---|---|
| 10/05/2021 | 54 | NOTICE *of Filing* by SALUSTHIAN LUTAMILA (Attachments: # 1 Notice to Counsel/Party 1, # 2 Notice to Counsel/Party 2)(Akpan, Ubong) (Entered: 10/05/2021) |
| 10/06/2021 | 55 | MOTION to Permit a Designated Law Enforcement Agent to Sit at Counsel Table by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) Modified event/text on 10/6/2021 (zstd). (Entered: 10/06/2021) |
| 10/07/2021 | 56 | NOTICE OF ATTORNEY APPEARANCE: Tony Lenell Axam appearing for SALUSTHIAN LUTAMILA (Axam, Tony) (Entered: 10/07/2021) |
| 10/11/2021 | 57 | PRETRIAL MEMORANDUM *Regarding Procedures for Forfeiture Allegation* by USA as to SALUSTHIAN LUTAMILA (Lallas, Peter) (Entered: 10/11/2021) |
| 10/12/2021 | 58 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 10/12/2021) |
| 10/15/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Pretrial Conference as to SALUSTHIAN LUTAMILA held on 10/15/2021. Bond Status of Defendant: PERSONAL RECOGNIZANCE BOND (PR)/appeared via video; Court Reporter: Lisa Griffith; Defense Attorney: Ubong E. Akpan, Caroline P. Malone Sarah Catalano, and Ryan Walsh; US Attorney: Melissa Joy Jackson and Peter C. Lallas. (nbn) (Entered: 10/15/2021) |
| 10/15/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): As discussed during today's pretrial hearing, the Court ORDERS that: 1) A backup trial date is set for November 30, 2021, if the first trial date proves unavailable; 2) Defendant shall file any response to the Government's 55 Motion to Permit Agent by October 22, 2021; and 3) The parties shall exchange witness and exhibit lists by October 22, 2021. So ORDERED by Judge James E. Boasberg on 10/15/2021. (nbn) (Entered: 10/15/2021) |
| 10/18/2021 | 63 | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that if either party has objections or proposed additions to the attached Voir Dire, such party shall file such objections or proposed additions by October 29, 2021. So ORDERED by Judge James E. Boasberg on 10/18/2021. (znbn). (Entered: 10/18/2021) |
| 10/22/2021 | 59 | NOTICE *of Intent to Introduce Evidence Pursuant to FRE 902(11)* by USA as to SALUSTHIAN LUTAMILA (Lallas, Peter) (Entered: 10/22/2021) |
| 10/22/2021 | 60 | RESPONSE by SALUSTHIAN LUTAMILA re 55 MOTION to Permit *and Motion to Permit Desiganted Investigator to Sit at Defense Table* (Attachments: # 1 Text of Proposed Order)(Akpan, Ubong) (Entered: 10/22/2021) |
| 10/28/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that, given the congestion on the master trial calendar, the trial date of November 8, 2021, is VACATED, and trial will commence on the backup date of November 30, 2021. So ORDERED by Judge James E. Boasberg on 10/28/2021. (nbn) (Entered: 10/28/2021) |
| 10/29/2021 | 61 | RESPONSE by USA as to SALUSTHIAN LUTAMILA re 63 Order,, Set Deadlines, (Lallas, Peter) (Entered: 10/29/2021) |
| 10/29/2021 | 62 | RESPONSE by SALUSTHIAN LUTAMILA re 63 Order,, Set Deadlines, (Akpan, Ubong) (Entered: 10/29/2021) |
| 11/02/2021 | 64 | Unopposed MOTION to Exclude time Under The Speedy Trial Act by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Lallas, Peter) Modified event title on 11/3/2021 (zstd). (Entered: 11/02/2021) |
| 11/05/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that: 1) The trial will proceed as scheduled on November 30, 2021; and 2) The Government's 64 Motion for Speedy Trial Exclusion is GRANTED, as the Court finds it in the interests of justice to exclude time under the STA through November 30, 2021. So ORDERED by Judge James E. Boasberg on 11/5/2021. (nbn) (Entered: |

| | | |
|---|---|---|
| | | 11/08/2021) |
| 11/11/2021 | 65 | NOTICE *of Filing* by SALUSTHIAN LUTAMILA (Attachments: # 1 Notice to Counsel/Party 3, # 2 Notice to Counsel/Party 4, # 3 Notice to Counsel/Party 5, # 4 Notice to Counsel/Party 6)(Akpan, Ubong) (Entered: 11/11/2021) |
| 11/15/2021 | 66 | MOTION for Production of *Jencks Material* by SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Akpan, Ubong) Modified text on 11/16/2021 (zstd). (Entered: 11/15/2021) |
| 11/16/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that the Government shall respond to Defendant's 66 Motion to Produce by November 19, 2021. So ORDERED by Judge James E. Boasberg on 11/16/2021. (nbn) (Entered: 11/16/2021) |
| 11/19/2021 | 67 | NOTICE *OF FILING DISCOVERY LETTERS* by USA as to SALUSTHIAN LUTAMILA (Attachments: # 1 Exhibit Production 12 Letter, # 2 Exhibit Production 13 Letter, # 3 Exhibit Production 14 Letter, # 4 Exhibit Production 15 Letter, # 5 Exhibit Production 16 Letter, # 6 Exhibit Production 17 Letter, # 7 Exhibit Production 18 Letter, # 8 Exhibit Production 19 Letter)(Lallas, Peter) (Entered: 11/19/2021) |
| 11/19/2021 | 68 | Memorandum in Opposition by USA as to SALUSTHIAN LUTAMILA re 66 MOTION to Produce *Jencks Material* (Lallas, Peter) (Entered: 11/19/2021) |
| 11/20/2021 | 69 | REPLY TO OPPOSITION to Motion by SALUSTHIAN LUTAMILA re 66 MOTION to Produce *Jencks Material* (Akpan, Ubong) (Entered: 11/20/2021) |
| 11/23/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that: 1) The Government's Motion to Permit Law–Enforcement Agent to Sit at Counsel Table is GRANTED; 2) Defendant may also have a defense investigator sit at the defense table; 3) Defendant's 66 Motion for Jencks Material is GRANTED IN PART and DENIED IN PART inasmuch as the Government shall produce any outstanding Jencks by November 26, 2021, at noon. So ORDERED by Judge James E. Boasberg on 11/23/2021. (nbn) (Entered: 11/23/2021) |
| 11/27/2021 | 70 | MOTION to Stay *Trial Pending Resolution of Fair Cross Section Issues* by SALUSTHIAN LUTAMILA. (Axam, Tony) (Entered: 11/27/2021) |
| 11/29/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): After discussions with the parties, the Court ORDERS a Hearing in re of 70 MOTION to Stay Trial Pending Resolution of Fair Cross Section Issues by SALUSTHIAN LUTAMILA is set for 11/29/2021 at 03:30 PM in Telephonic/VTC before Judge James E. Boasberg. So ORDERED by Judge James E. Boasberg on 11/29/2021. (nbn) (Entered: 11/29/2021) |
| 11/29/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: Motion Hearing as to SALUSTHIAN LUTAMILA held on 11/29/2021 re 70 MOTION to Stay *Trial Pending Resolution of Fair Cross Section Issues* filed by SALUSTHIAN LUTAMILA. Oral discussions heard, motion GRANTED for the reason stated on the record. Jury Trial set for November 30, 2021 at 9:30 AM is VACATED. Status Conference set for 12/3/2021 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance Bond (PR)/appeared via Zoom video; Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan, Tony Axam, Caroline Malone, and Sarah Catalano; US Attorney: Peter Lallas and Melissa Jackson. (nbn) (Entered: 11/29/2021) |
| 12/03/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: video Status Conference as to SALUSTHIAN LUTAMILA (1) held on 12/3/2021. Oral request by the Defense for "deposition of a Jury Office Representative", HEARD and GRANTED. Minute Order forthcoming. The Court also finds it in the interests of justice to exclude time under the STA through February 28, 2022. Excludable started as to SALUSTHIAN LUTAMILA (1). Jury Trial set for 2/28/2022 at 09:30 AM in Courtroom 25– In Person before Judge James E. Boasberg. Status Conference set for 1/7/2022 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on PERSONAL RECOGNIZANCE BOND (PR)/appeared via Zoom video; Court Reporter: Nancy Meyers; Defense Attorney: Ubong Akpan, Tony Axam, Caroline Malone, and Sarah Catalano; US Attorney: Peter Lallas. (nbn) (Entered: 12/03/2021) |

| 12/03/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): As discussed at today's hearing, the Court ORDERS that: 1) The parties may conduct a deposition of a jury office representative concerning the method of summoning petit jurors and any policies or practices regarding COVID excuses on a date convenient to counsel and the representative; 2) The parties shall return for a further status hearing on January 7, 2022, at 10:00 a.m.; and 3) Trial shall be set for February 28, 2022, at 9:30 a.m.. So ORDERED by Judge James E. Boasberg on 12/3/21. (nbn) (Entered: 12/03/2021) |
|---|---|---|
| 12/15/2021 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): In lieu of a deposition, the Court ORDERS that Regina Larry, Jury Office Coordinator, shall appear to testify in open court on January 5, 2022, at 2:00 p.m. regarding jury–office procedures. Defendant and then the Government may examine her. So ORDERED, by Judge James E. Boasberg on 12/15/2021. (nbn) (Entered: 12/15/2021) |
| 01/04/2022 | | NOTICE OF COURTROOM CHANGE in case as to SALUSTHIAN LUTAMILA (1): Status Conference set for 1/5/2022 at 02:00 PM in VTC before Judge James E. Boasberg. (nbn) (Entered: 01/04/2022) |
| 01/05/2022 | 71 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 01/05/2022) |
| 01/05/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Status Conference as to SALUSTHIAN LUTAMILA (1) held on 1/5/2022. Status Conference set for 1/19/2022 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on PERSONAL RECOGNIZANCE BOND (PR)/appeared via Zoom video; Court Reporter: Lisa Griffith; Defense Attorney: Tony Axam; US Attorney: Melisa Jackson and Peter Lallas; Witnesses: Regina Larry. (nbn) (Entered: 01/05/2022) |
| 01/10/2022 | 72 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 1–5–2022; Page Numbers: 1–55. Date of Issuance:1–10–2022. Court Reporter/Transcriber Lisa W Griffith, Telephone number (202) 354–3247, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the c ourt reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 1/31/2022. Redacted Transcript Deadline set for 2/10/2022. Release of Transcript Restriction set for 4/10/2022.(Griffith, Lisa) (Entered: 01/10/2022) |
| 01/14/2022 | 73 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 01/14/2022) |
| 01/19/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Status Conference as to SALUSTHIAN LUTAMILA (1) held on 1/19/2022. The Court ORDERS that the Jury Trial set for February 28, 2022, at 9:30 a.m. is hereby VACATED. A further Status Conference is set for 2/3/2022 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance Bond (PR)/appeared via Zoom video; Court Reporter: Lisa Griffith; Defense Attorney: Tony Axam, Ubong Akpan, and Sarah Catalano; US Attorney: Peter Lallas and Melissa Jackson. (nbn) (Entered: 01/19/2022) |
| 01/25/2022 | 74 | NOTICE FROM JURY OFFICE. (lcjeb1) (Entered: 01/25/2022) |

| 02/03/2022 | 75 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 02/03/2022) |
|---|---|---|
| 02/03/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Status Conference as to SALUSTHIAN LUTAMILA (1). held on 2/3/2022. The Court will Toll Speedy Trial between February 3, 2022 and May 16, 2022, in the Interest of Justice (XT). Excludable started as to SALUSTHIAN LUTAMILA (1). Status Conference set for 2/10/2022 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. Jury Trial set for 5/16/2022 at 09:30 AM in Courtroom 25A– In Person before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance Bond (PR)/appeared via Zoom video; Court Reporter: Lisa Griffith; Defense Attorney: Tony Axam, Ubong Akpan, and Sarah Catalano; US Attorney: Melissa Jackson and Peter Lallas. (nbn) (Entered: 02/04/2022) |
| 02/08/2022 | 76 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested.(Copes, John) (Entered: 02/08/2022) |
| 02/10/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Status Conference as to SALUSTHIAN LUTAMILA (1) held on 2/10/2022. Status Conference set for 2/17/2022 at 02:00 PM in Telephonic/VTC before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance Bond (PR)/appeared via Zoom video; Court Reporter: Lisa Griffith; Defense Attorney: Tony Axam and Ubong Akpan; US Attorney: Melissa Jackson and Peter Lallas. (nbn) (Entered: 02/10/2022) |
| 02/14/2022 | 77 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested.(Copes, John) (Entered: 02/14/2022) |
| 02/15/2022 | 78 | TRANSCRIPT OF PROCEEDINGS (remotely held) in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 12/03/2021. Page Numbers: 1–12. Date of Issuance: 02/10/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by submitting the <ahref="http://www.dcd.uscourts.gov/node/110">Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/8/2022. Redacted Transcript Deadline set for 3/18/2022. Release of Transcript Restriction set for 5/16/2022.(Meyer, Nancy) (Entered: 02/15/2022) |
| 02/17/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Telephone Status Conference as to SALUSTHIAN LUTAMILA (1) held on 2/17/2022. Joint Status Report due by 3/10/2022. Bond Status of Defendant: remains on Personal Recognizance Bond/appeared via telephone; Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan and Tony Axam; US Attorney: Melissa Jackson and Peter Lallas. (nbn) (Entered: 02/17/2022) |
| 02/17/2022 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that the parties shall submit a Joint Status Report regarding Defendant's jury challenge by March 10, 2022. So ORDERED, by Judge James E. Boasberg on 2/17/2022. (nbn) (Entered: 02/17/2022) |
| 03/02/2022 | 79 | MOTION to Inspect *Records Related to Jury Composition and Selection* by SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Axam, |

| | | |
|---|---|---|
| | | Tony) (Entered: 03/02/2022) |
| 03/02/2022 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): At the parties request, the Court ORDERS that the Jury Trial set for 5/16/2022 is VACATED and RESET to 5/9/2022 at 09:30 AM in Courtroom 25A– In Person before Judge James E. Boasberg. So ORDERED, by Judge James E. Boasberg on 3/2/2022. (nbn) (Entered: 03/02/2022) |
| 03/03/2022 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS that Defendant's 79 Motion to Inspect is GRANTED, and the Clerk of the Court shall make the requested documents available to both sides. So ORDERED, by Judge James E. Boasberg on 3/3/2022. (nbn) (Entered: 03/03/2022) |
| 03/10/2022 | 80 | STATUS REPORT *regarding jury challenge* by SALUSTHIAN LUTAMILA (Axam, Tony) (Entered: 03/10/2022) |
| 03/10/2022 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court adopts the parties 80 STATUS REPORT regarding jury challenge and Orders Status Report due by 3/25/2022. So ORDERED, by Judge James E. Boasberg on 3/10/2022. (nbn) (Entered: 03/10/2022) |
| 03/25/2022 | 81 | STATUS REPORT by SALUSTHIAN LUTAMILA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Axam, Tony) (Entered: 03/25/2022) |
| 03/28/2022 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ADOPTS the 81 Status Report submitted and ORDERS that the parties submit a further Joint Status Report by April 8, 2022. So ORDERED, by Judge James E. Boasberg on 3/28/2022. (nbn) (Entered: 03/28/2022) |
| 03/29/2022 | 83 | STATUS REPORT by USA as to SALUSTHIAN LUTAMILA (Lallas, Peter) (Entered: 03/29/2022) |
| 03/29/2022 | | MINUTE ORDER as to SALUSTHIAN LUTAMILA (1): The Court ORDERS the parties appear via Zoom for a Status Conference set for 4/5/2022 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. So ORDERED, by Judge James E. Boasberg on 3/29/2022. (nbn) (Entered: 03/29/2022) |
| 04/05/2022 | 84 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested.(Copes, John) (Entered: 04/05/2022) |
| 04/05/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Status Conference as to SALUSTHIAN LUTAMILA (1) held on 4/5/2022. Motions due by 4/12/2022. Responses due by 4/19/2022. Replies due by 4/25/2022. Pretrial Conference set for 4/28/2022 at 11:00 AM in Courtroom 25A– In Person before Judge James E. Boasberg. Bond Status of Defendant: Personal Recognizance Bond (PR)/appeared via Zoom; Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan, Tony Axam, Caroline Malone, Sarah Catalano, Ryan Walsh; US Attorney: Melissa Jackson and Peter Lallas. (nbn) (Entered: 04/05/2022) |
| 04/12/2022 | 85 | NOTICE *of Filing* by SALUSTHIAN LUTAMILA (Axam, Tony) (Entered: 04/12/2022) |
| 04/28/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Hybrid Pretrial Conference as to SALUSTHIAN LUTAMILA (1) held on 4/28/2022. Bond Status of Defendant: remains on Personal Recognizance Bond (PR); Court Reporter: Lisa Griffith; Defense Attorney: Tony Axam, Ubong Akpan (Zoom), Caroline Malone (Zoom), and Sara Catalano (Zoom); US Attorney: Melissa Jackson and Peter Lallas. (nbn) (Entered: 04/28/2022) |
| 05/09/2022 | 86 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 05/09/2022) |
| 05/09/2022 | | MINUTE ORDER: The Court having impaneled the jury in this action, it is hereby ORDERED that during trial and deliberations all meals for said jury shall be paid by the Clerk of the Court for the U.S. District Court for the District of Columbia. So ORDERED, by Judge James E. Boasberg on 5/9/52022. (nbn) (Entered: 05/09/2022) |

| 05/09/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Jury Trial as to SALUSTHIAN LUTAMILA (1) held on 5/9/2022 as to counts 1–21. Twelve (12) Jurors and Two (2) Alternates selected and sworn. Jury Trial is continued to 5/10/2022 at 09:30 AM in Courtroom 25A– In Person before Judge James E. Boasberg. Bond Status of Defendant: Personal Recogtnizance Bond (PR); Court Reporter: Lisa Griffith; Defense Attorney: Caroline Malone, Sarah Catalano, Ubong Akpan, aned Ryan Walsh; US Attorney: Melissa Jackson and Peter Lallas; Government Witness: William Lusk. (nbn) (Entered: 05/09/2022) |
|---|---|---|
| 05/10/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Jury Trial as to SALUSTHIAN LUTAMILA (1) held on 5/10/2022 on counts 1–21. Same jury of 12 and 2 alternates. Jury Trial continued to 5/11/2022 at 09:30 AM in Courtroom 25A– In Person before Judge James E. Boasberg. Bond Status of Defendant: Personal Recognizance Bond (PR); Court Reporter: Lisa Griffith; Defense Attorney: Ubong Akpan, Caroline Malone, and Sarah Catelano; US Attorney: Peter Lallas and Melissa Jackson; Government Witnesses: Marianne Quinn, Mark Schwartz, Florencia Hunt, Allen Deleon, Kia Ware, Thomas Walsh, Bryce Oleski, and Gary Frazier. (nbn) (Entered: 05/10/2022) |
| 05/11/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Jury Trial as to SALUSTHIAN LUTAMILA (1) held on 5/11/2022 on counts 1–21. Same jury of 12 and 2 alternates. Government rests. Oral motion by the defense for Judgment of Acquittal, HEARD and DENIED, for the reasons stated on the record. Defense rests. Renewed oral motion by the defense for Judgment of Acquittal, HEARD and DENIED, for the reasons previously set forth on the record. Jury Trial resumed and concluded. Same jury of 12 and 2 alternates. Alternates discharged. Jury Deliberations begun and concluded with a verdict of GUILTY as to counts 1–21. REFERRAL TO PROBATION OFFICE for Presentence Investigation as to SALUSTHIAN LUTAMILA (1). Oral motion by the Government to "detain the defendant until Sentencing", HEARD and DENIED for the reasons stated on the record. Oral motion by the Government to "modify the conditions of release", HEARD and GRANTED. Sentencing set for 9/16/2022 at 11:00 AM in Courtroom 25A– In Person before Judge James E. Boasberg. Bond Status of Defendant: remains on Personal Recognizance Bond (PR); Court Reporter: Lisa Griffith; Defense Attorney: Sarah Catalano, Caroline Malone, and Ubong Akpan; US Attorney: Melissa Jackson and Peter Lallas; Government Witness; Gary Frazier (continued and concluded):Defense Witnesses Randy Combs, and Florencia Hunt(recalled by defense). (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 88 | Jury Instructions as to SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 89 | Jury Notes (3) as to SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 90 | VERDICT FORM as to SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 91 | ORDER MODIFYING CONDITIONS OF RELEASE as to SALUSTHIAN LUTAMILA (1).. Signed by Judge James E. Boasberg on 5/11/2022. (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 92 | **Signature Page of Foreperson**<br><br>as to SALUSTHIAN LUTAMILA in Jury Notes (3). (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.) (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 93 | **Signature Page of Foreperson**<br><br>as to SALUSTHIAN LUTAMILA in Jury Verdict. (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.) (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 94 | ATTORNEYS'JOINT ACKNOWLEDGMENT OF TRIAL EXHIBITS as to SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 95 | EXHIBIT LIST by USA as to SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 05/11/2022) |
| 05/11/2022 | 96 | EXHIBIT LIST by SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 05/11/2022) |

| 08/12/2022 | 97 | DRAFT PRESENCE INVESTIGATION REPORT (prepared by Sr. USPO Sherry Baker) as to SALUSTHIAN LUTAMILA(Kraemer–Soares, Kelly) (Entered: 08/12/2022) |
|---|---|---|
| 09/09/2022 | 98 | FINAL PRESENCE INVESTIGATION REPORT (prepared by Sr. USPO Sherry Baker) as to SALUSTHIAN LUTAMILA(Kraemer–Soares, Kelly) (Entered: 09/09/2022) |
| 09/09/2022 | 99 | RECOMMENDATION of FINAL PRESENCE INVESTIGATION REPORT (prepared by Sr. USPO Sherry Baker) as to SALUSTHIAN LUTAMILA(Kraemer–Soares, Kelly) (Entered: 09/09/2022) |
| 09/13/2022 | 100 | SENTENCING MEMORANDUM by USA as to SALUSTHIAN LUTAMILA (Jackson, Melissa) (Entered: 09/13/2022) |
| 09/14/2022 | 101 | SENTENCING MEMORANDUM by SALUSTHIAN LUTAMILA (Akpan, Ubong) (Entered: 09/14/2022) |
| 09/15/2022 | 102 | PROBATION MEMORANDUM (prepared by Sr. USPO Sherry Baker) as to SALUSTHIAN LUTAMILA This document is for informational purposes only. No action is requested.(Kraemer–Soares, Kelly) (Entered: 09/15/2022) |
| 09/15/2022 | 103 | PRETRIAL COMPLIANCE REPORT as to SALUSTHIAN LUTAMILA. This document is for informational purposes only. No action is requested. (Attachments: # 1 Supplement)(Copes, John) (Entered: 09/15/2022) |
| 09/16/2022 | 104 | SUPPLEMENTAL re 100 SENTENCING MEMORANDUM by USA as to SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order Exhibit A: Proposed Forfeiture Order) (Jackson, Melissa) Modified Text to Add Link on 9/16/2022 (zhsj). (Entered: 09/16/2022) |
| 09/16/2022 | 105 | ORDER OF FORFEITURE as to SALUSTHIAN LUTAMILA (1). Signed by Judge James E. Boasberg on 9/16/2022. (nbn) (Entered: 09/16/2022) |
| 09/16/2022 |  | Minute Entry for proceedings held before Judge James E. Boasberg: Sentencing held on 9/16/2022 as to SALUSTHIAN LUTAMILA (1). Defendant sentenced to forty–four (44) months incarceration, thirty–six (36) months Supervised Released on counts 1–21 to run concurrently, Restitution in the amount of 76,069.63, and a Special Assessment of $100 on each count (1–21) totaling $2100. Appeal rights given. Bond Status of Defendant: PERSONAL RECOGNIZANCE BOND; Court Reporter: LISA GRIFFITH; Defense Attorney: UBONG AKPAN; US Attorney: MELISSA JACKSON; Prob Officer: AMI LANDON; Government Witnesses: Chip Lusk, Mark Schwartz, and Marianne Quinn. (nbn) (Entered: 09/16/2022) |
| 09/16/2022 | 106 | EXHIBIT TO SUPPLEMENT THE SENTENCING MEMORANDUM as to SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 09/16/2022) |
| 09/16/2022 | 107 | Receipt and Acknowledgment of Presentence Investigation Report by SALUSTHIAN LUTAMILA (1). (nbn) (Entered: 09/16/2022) |
| 09/19/2022 | 109 | JUDGMENT as to SALUSTHIAN LUTAMILA. Statement of Reasons Not Included. Signed by Judge James E. Boasberg on 9/19/2022. (Attachments: # 1 Order of Forfeiture) (zstd) (Main Document 109 replaced on 9/21/2022) (zstd). (Entered: 09/20/2022) |
| 09/19/2022 | 110 | STATEMENT OF REASONS as to SALUSTHIAN LUTAMILA re 109 Judgment Access to the PDF Document is restricted per Judicial Conference Policy. Access is limited to Counsel of Record and the Court. Signed by Judge James E. Boasberg on 9/19/2022. (zstd) (Entered: 09/20/2022) |
| 09/22/2022 | 111 | NOTICE OF APPEAL – Final Judgment by SALUSTHIAN LUTAMILA Fee Status: No Fee Paid. Parties have been notified. (Akpan, Ubong) (Entered: 09/22/2022) |
| 09/22/2022 | 112 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The fee was not paid as the defendant is represented by FPD as to SALUSTHIAN LUTAMILA re 111 Notice of Appeal – Final Judgment. (zstd) (Entered: 09/22/2022) |

| 09/26/2022 | 113 | MOTION for Release Pending Appeal and MOTION for an Immediate Administrative Stay of Sentence by SALUSTHIAN LUTAMILA. "Leave to file GRANTED". Signed by Judge James E. Boasberg United States District Judge on 9/26/2022. (zstd) (Entered: 09/26/2022) |
|---|---|---|
| 09/26/2022 | 114 | SUPPLEMENT by SALUSTHIAN LUTAMILA re 113 MOTION for Release Pending Appeal. "Leave to file GRANTED". Signed by Judge James E. Boasberg United States District Judge on 9/26/2022. (zstd) (Entered: 09/26/2022) |
| 09/26/2022 | | USCA Case Number as to SALUSTHIAN LUTAMILA 22−3068 for 111 Notice of Appeal − Final Judgment filed by SALUSTHIAN LUTAMILA. (zstd) (Entered: 09/26/2022) |
| 10/07/2022 | 115 | RESPONSE by USA as to SALUSTHIAN LUTAMILA re 113 MOTION for Release from Custody MOTION to Stay (Jackson, Melissa) (Entered: 10/07/2022) |
| 10/11/2022 | 116 | REPLY TO OPPOSITION to Motion by SALUSTHIAN LUTAMILA re 113 MOTION for Release Pending Appeal. "Leave to file GRANTED". Signed by Judge James E. Boasberg on 10/11/2022. (zstd) (Entered: 10/11/2022) |
| 10/17/2022 | 117 | Unopposed MOTION for Extension of Time to *Report to BOP* by SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Akpan, Ubong) (Entered: 10/17/2022) |
| 10/18/2022 | 118 | ORDER granting 117 Motion for Extension of Time as to SALUSTHIAN LUTAMILA (1). The Court ORDERS the defendant may Self−Surrender on or about November 25, 2022. So ORDERED, by Judge James E. Boasberg on 10/18/2022. (nbn) . (Entered: 10/18/2022) |
| 11/07/2022 | 119 | ORDER denying 113 Motion for Release from Custody as to SALUSTHIAN LUTAMILA (1); denying 113 Motion to Stay as to SALUSTHIAN LUTAMILA (1). Signed by Judge James E. Boasberg on 11/7/2022. (nbn) (Entered: 11/07/2022) |
| 11/07/2022 | 120 | MEMORANDUM OPINION regarding 119 ORDER denying 113 MOTION for Release Pending Appeal and MOTION for an Immediate Administrative Stay of Sentence as to SALUSTHIAN LUTAMILA (1). Signed by Judge James E. Boasberg on 11/7/2022. (nbn) (Entered: 11/07/2022) |
| 11/28/2022 | 121 | Unopposed MOTION to Travel *for Self−Surrender* by SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Akpan, Ubong) (Entered: 11/28/2022) |
| 11/28/2022 | | MINUTE ORDER granting 121 Motion to Travel as to SALUSTHIAN LUTAMILA (1). So ORDERED, by Judge James E. Boasberg on 11/28/2022. (nbn) (Entered: 11/28/2022) |
| 02/06/2023 | 124 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Magistrate Judge Deborah A. Robinson held on October 2, 2019; Page Numbers: 1−9. Date of Issuance:February 6, 2023. Court Reporter/Transcriber Janice Dickman, Telephone number 202−354−3267, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/27/2023. Redacted Transcript Deadline set for 3/9/2023. Release of Transcript Restriction set for 5/7/2023.(Dickman, Janice) (Entered: 02/06/2023) |

| | | |
|---|---|---|
| 02/07/2023 | <u>125</u> | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Magistrate Judge G. Michael Harvey held on November 20, 2019; Page Numbers: 1–4. Date of Issuance:February 7, 2023. Court Reporter/Transcriber Janice Dickman, Telephone number 202–354–3267, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/28/2023. Redacted Transcript Deadline set for 3/10/2023. Release of Transcript Restriction set for 5/8/2023.(Dickman, Janice) (Entered: 02/07/2023) |
| 02/07/2023 | <u>126</u> | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Magistrate Judge Deborah A. Robinson held on January 30, 2020; Page Numbers: 1–5. Date of Issuance:February 7, 2023. Court Reporter/Transcriber Janice Dickman, Telephone number 202–354–3267, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/28/2023. Redacted Transcript Deadline set for 3/10/2023. Release of Transcript Restriction set for 5/8/2023.(Dickman, Janice) (Entered: 02/07/2023) |
| 02/28/2023 | <u>127</u> | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 1/19/2022; Page Numbers: 1–8. Date of Issuance:1/19/2022. Court Reporter/Transcriber Lisa Griffith, Email Address, lgriffith54@outlook.com, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |

| 02/28/2023 | <u>128</u> | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 2/3/2022; Page Numbers: 1–8. Date of Issuance:2/3/2022. Court Reporter/Transcriber Lisa Griffith, Email Address, lgriffith54@outlook.com, Transcripts may be ordered by submitting the <u>Transcript Order Form</u>

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | <u>129</u> | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 2/4/2020; Page Numbers: 1–4. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address, lgriffith54@outlook.com, Transcripts may be ordered by submitting the <u>Transcript Order Form</u>

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | <u>130</u> | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 2/10/2022; Page Numbers: 1–5. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address, lgriffith54@outlook.com, Transcripts may be ordered by submitting the <u>Transcript Order Form</u>

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | <u>131</u> | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 4/5/2022; Page Numbers: 1–13. Date of |

| | | |
|---|---|---|
| | | Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 132 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 4/28/2022; Page Numbers: 1−21. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 133 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 5/6/2021; Page Numbers: 1−18. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 134 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 5/9/2022; Page Numbers: 1−143. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript |

| | | |
|---|---|---|
| | | Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 135 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 5/11/2022; Page Numbers: 1−159. Date of Issuance:2/28/2022. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 136 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 6/2/2020; Page Numbers: 1−7. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 137 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 6/17/2021; Page Numbers: 1−7. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 138 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 7/15/2022; Page Numbers: 1−8. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 139 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 8/17/2020; Page Numbers: 1−9. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 140 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 9/16/2022; Page Numbers: 1−37. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. |

| | | |
|---|---|---|
| | | After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 141 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 10/15/2021; Page Numbers: 1−8. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 142 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 10/19/2020; Page Numbers: 1−19. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | 143 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 11/29/2021; Page Numbers: 1−14. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | [144](#) | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 12/17/2020; Page Numbers: 1−7. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 02/28/2023 | [145](#) | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 5/10/2022; Page Numbers: 1−285. Date of Issuance:2/28/2023. Court Reporter/Transcriber Lisa Griffith, Email Address lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/21/2023. Redacted Transcript Deadline set for 3/31/2023. Release of Transcript Restriction set for 5/29/2023.(rj) (Entered: 02/28/2023) |
| 03/08/2023 | [146](#) | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 2/17/2022; Page Numbers: 1−10. Date of Issuance:3/8/2023. Court Reporter/Transcriber Lisa Walker Griffith, RPR, Email lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal |

| | | |
|---|---|---|
| | | identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/29/2023. Redacted Transcript Deadline set for 4/8/2023. Release of Transcript Restriction set for 6/6/2023.(ztnr) (Entered: 03/08/2023) |
| 03/08/2023 | 147 | TRANSCRIPT OF PROCEEDINGS in case as to SALUSTHIAN LUTAMILA before Judge James E. Boasberg held on 4/28/2021; Page Numbers: 1–6. Date of Issuance:3/8/2023. Court Reporter/Transcriber Lisa Walker Griffith, RPR, Email lgriffith54@outlook.com, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/29/2023. Redacted Transcript Deadline set for 4/8/2023. Release of Transcript Restriction set for 6/6/2023.(ztnr) (Entered: 03/08/2023) |
| 03/13/2023 | 149 | Unopposed MOTION for Limited Unsealing by SALUSTHIAN LUTAMILA. (Attachments: # 1 Text of Proposed Order)(Axam, Tony) (Entered: 03/13/2023) |
| 03/14/2023 | | MINUTE ORDER granting 149 Motion for Limited Unsealing as to SALUSTHIAN LUTAMILA (1). So ORDERED, by Judge James E. Boasberg on 3/14/2023. (nbn) (Entered: 03/14/2023) |

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| SALUSTHIAN LUTAMILA | ) | Case No. |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 2018_____ in the county of ___United States of America___ in the

_____ District of _____Columbia_____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Randy C. Combs, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____09/24/2019_____

_____
*Judge's signature*

City and state: _____Washington, D.C._____        Robin M. Meriweather, U.S. Magistrate Judge
*Printed name and title*

26

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Magistrate No.**_____ |
| **v.** | **Violation:** |
| **SALUSTHIAN LUTAMILA** **(a/k/a SALLU LUTAMILA),** | **18 U.S.C. 1343 (Wire Fraud)** |
| **Defendant.** | **UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Randy C. Combs, first being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2010.  I am currently assigned to a white collar crime squad at the FBI's Washington Field Office ("WFO").  During my employment with the FBI, I have conducted and/or assisted in numerous national security and criminal investigations, to include matters involving money laundering, bank fraud, and wire fraud in violation of Title 18 of the United States Code.  I have gained experience in the conduct of such investigations through training, courses, and everyday work related to conducting these types of investigations.

2.      This affidavit is being submitted in support of a criminal complaint and an arrest warrant based on probable cause to believe that SALUSTHIAN LUTAMILA has committed the offense of Wire Fraud, in violation of Title 18, United States Code, Section 1343.

3.      The facts and information contained in this affidavit are based on my personal knowledge and observations, my review of records and documents obtained during this

1

investigation, information received from other individuals, and my experience and training as a Special Agent.

4.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND AND OVERVIEW

5.      Your affiant and other law enforcement personnel conducted multiple interviews and reviewed numerous documents during the course of this investigation, information from which is described more fully in the following paragraphs.  Based on these interviews and the review of numerous documents, it appears that between November 2018 and January 2019, SALUSTHIAN LUTAMILA ("LUTAMILA") embezzled approximately $610,000 from the Inter-American Development Bank ("IDB") – IIC Federal Credit Union ("FCU")[1], by transferring IDB-IIC FCU funds to his personal E*TRADE account without authorization or justification.

6.      The IDB-IIC FCU is located in Washington, D.C. and provides loans, checking accounts, and savings accounts, along with other services.  According to their publically available website, the IDB-IIC FCU has more than 11,000 members and over $560,000,000 in assets.

7.      LUTAMILA began his employment with the IDB-IIC FCU in or about November 2016.  LUTAMILA's positions within IDB-IIC FCU included Controller, Director of Finance, and Acting Chief Financial Officer ("CFO").

8.      In or about May 2017, LUTAMILA became Acting CFO and was provided with an executive coach and given presentation skills training, in an attempt to help LUTAMILA achieve and demonstrate the skills of a CFO.  However, LUTAMILA did not show progress and his presentations did not show improvement to the level required of a CFO.

---

[1] The IDB-IIC FCU was rebranded in June 2019 as the IDB Global Federal Credit Union.  For the purposes of this affidavit, IDB Global Federal Credit Union will be referred to as IDB-IIC FCU.

9.      On or about August 30, 2018, an IDB-IIC FCU executive ("Person #1"), a senior executive with the credit union, informed LUTAMILA that the IDB-IIC FCU was going to look at other candidates to be the permanent CFO.  Person #1 also informed LUTAMILA that there was still a place for him at the IDB-IIC FCU.  LUTAMILA was asked to assist in the process of finding a new CFO for the IDB-IIC FCU.  LUTAMILA participated in the hiring process for the new CFO from September 2018 to December 2018.

10.     The new CFO began their employment with the IDB-IIC FCU on or about January 22, 2019, which was in the midst of the IDB-IIC FCU year-end audit.  When the auditing firm conducted IDB-IIC FCU's year-end audit, it was the firm's practice to review accruals and compare those amounts to supporting documentation.

11.     In or about April 2019, an IDB-IIC FCU executive ("Person #2"), a financial executive with the credit union, reviewed accruals for tax liabilities of the IDB-IIC FCU for employee tax withholdings and other tax accruals in preparation for the auditors.  While conducting this review, Person #2 discovered suspicious transactions that suggested LUTAMILA was embezzling funds from the IDB-IIC FCU.

12.     On or about April 11, 2019, Person #2 discovered funds from multiple internal IDB-IIC FCU accounts were being sent to another internal IDB-IIC FCU account called Acceso.  The Acceso account was a dormant internal IDB-IIC FCU account that had been reactivated at the direction of LUTAMILA.  Person #2 discovered that the movement of funds into the Acceso account was done under LUTAMILA's employee user name.  Further examination by Person #2 revealed the money was then being disbursed from the Acceso account to an E*TRADE account.  LUTAMILA had the access required to make entries and conduct account transfers, and according

to Person #2, the way the IDB-IIC FCU had its accounting and banking software set, making journal entries and the movement of money between accounts did not require dual authentication.

## PROBABLE CAUSE

13.     Beginning in November 2018, a number of unauthorized transfers were conducted from IDB-IIC FCU's Acceso account to an E*TRADE account, of which LUTAMILA is the sole owner.  These transactions were accomplished by transferring funds from various IDB-IIC FCU internal accounts to IDB-IIC FCU's Acceso account.   Automated clearing house ("ACH") [2] transfers were then sent to LUTAMILA's E*TRADE account.

14.     A review of documents obtained through this investigation showed on multiple dates between November 2018 and January 2019, LUTAMILA transferred a total of $610,000 from various IDB-IIC FCU accounts to the IDB-IIC FCU Acceso account.  A further review of IDB-IIC FCU documents showed that between November 2018 and January 2019, seven ACH transfers totaling $610,000, were sent from IDB-IIC FCU's Acceso account to LUTAMILA's E*TRADE account.

15.     Based on information developed through this investigation, your affiant believes LUTAMILA to have two E*TRADE accounts, one which being account number ****5074. E*TRADE account ****5074 was opened on November 8, 2018, with LUTAMILA listed as the sole owner of the account.   E*TRADE account ****5074 was opened approximately one week before the first unauthorized ACH transfer from the IDB-IIC FCU Acceso account.  A review of E*TRADE account ****5074 records revealed that between November 2018 and January 2019, $610,000 entered into the account, via seven ACH transfers from IDB-IIC FCU's Acceso account.

---

[2] Automated clearing house ("ACH") is a network that coordinates electronic transactions between financial institutions.

16.     In May 2019, your affiant conducted an interview with Person #1.  During the interview your affiant learned LUTAMILA did not have approval from anyone at IDB-IIC FCU to withdraw $610,000 and place the money in his personal account.  Additionally, in May 2019, your affiant conducted an interview with Person #2.  During this interview, Person #2 stated LUTAMILA created large intricate entries to the IDB-IIC FCU accounting system to conceal the movement of funds.

17.     In September 2019, your affiant conducted a follow-up interview of Person #2.  During this interview, your affiant learned the unauthorized ACH transfers from IDB-IIC FCU to E*TRADE were initiated by E*TRADE.  Through a September 2019 interview of an E*TRADE executive ("Person #3"), your affiant learned that when an ACH request is originated through E*TRADE, the institution on the receiving end of the request will not see the specific E*TRADE account number associated with the request.  Your affiant believes it is likely LUTAMILA initiated the ACH transfers through E*TRADE in order to conceal specific account information from the IDB-IIC FCU.

18.     E*TRADE's server data center is located in a suburb of Atlanta, Georgia.  Your affiant learned through a September 2019 interview with Person #3 that all electronic requests, to include originated and received ACH requests, are processed through this server data center.  IDB-IIC FCU's outgoing transactions, to include ACH transfers, are processed through either the main servers in Iowa or back-up servers in Colorado.

19.     A review of internet protocol ("IP") history for LUTAMILA's online access to E*TRADE showed mobile account activity on November 30, 2018 at 2:18 p.m. from an IP address resolving to IDB-IIC FCU's location in Washington, D.C.  A review of LUTAMILA's E*TRADE account ****5074 records revealed the transaction date for an incoming deposit of $99,171 from

IDB-IIC FCU's Acceso account on the same date and time, November 30, 2018 at 2:18 p.m.   Your affiant therefore believes that, on November 30, 2018, LUTAMILA used a mobile electronic device located in the District of Columbia to login to his E*TRADE account and initiate an ACH transfer from IDB-IIC FCU to E*TRADE, thereby causing a wire transmission to be made in interstate commerce in furtherance of a scheme and artifice to defraud.

## **CONCLUSION**

20.      As described in this affidavit, there is reason to believe that SALUSTHIAN LUTAMILA conducted seven unauthorized transfers, between November 2018 and January 2019, from IDB-IIC FCU's Acceso account to his personal E*TRADE account, for a total of $610,000. Additionally, there is reason to believe LUTAMILA knowingly caused multiple ACH transfers to be made in interstate or foreign commerce, in furtherance of a scheme and artifice to defraud.

21.      Therefore, based on the aforementioned information, your affiant believes there is probable cause that from in or about November 2018 through in or about January 2019, in the District of Columbia and elsewhere, SALUSTHIAN LUTAMILA knowingly caused multiple wire transmissions totaling approximately $610,000 to be made in interstate or foreign commerce, in furtherance of a scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

22.     Therefore, I respectfully request that a criminal complaint charging LUTAMILA

with the crime of wire fraud be authorized and that an arrest warrant be issued.

Respectfully submitted,

_____
Randy C. Combs
Special Agent
Federal Bureau of Investigation
Department of Justice

Subscribed to and sworn to before me this _____ day of September, 2019

_____
HONORABLE ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on January 8, 2020

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| | : | |
| | : | Magistrate No. 19-mj-236 |
| v. | : | |
| | : | CHARGES: |
| SALUSTHIAN LUTAMILA, a/k/a | : | |
| "Sallu Lutamila," | : | 18 U.S.C. § 1344 (Bank Fraud); |
| "Lutamila Sallu Waiso," | : | 18 U.S.C. § 657 (Theft By Credit Union |
| | : | Employee); |
| | : | 18 U.S.C. § 1343 (Wire Fraud); and |
| | : | 18 U.S.C. § 1957 (Engaging in Monetary |
| | : | Transactions in Property Derived from |
| | : | Specified Unlawful Activity). |
| Defendant. | : | |
| | : | FORFEITURE ALLEGATION: |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(C) and (a)(2)(A), |
| | : | 28 U.S.C. § 2461(c), and |
| | : | 21 U.S.C. § 853(p) |
| | : | (Criminal Forfeiture). |

INDICTMENT

The Grand Jury charges that:

### Introduction

At all times relevant to this Indictment:

1.     The Inter-American Development Bank – IIC Federal Credit Union ("IDB FCU") was a financial institution as defined by Title 18, United States Code, Section 20, with accounts insured by the National Credit Union Share Insurance Fund. IDB FCU had an office located in

1

Washington, D.C. and provided loans, checking accounts, savings accounts, and other services to its members.

2.     Defendant SALUSTHIAN LUTAMILA, also known as "Sallu Lutamila" and "Lutamila Sallu Waiso," ("LUTAMILA") was the Acting Chief Financial Officer ("CFO") of IDB FCU.  As Acting CFO, LUTAMILA's duties included responsibility for managing the credit union's budget, supervision of accounts, cash flow management, and supervising implementation of a new software system to handle banking and accounting functions at IDB FCU. On or about August 30, 2018, an IDB FCU executive informed LUTAMILA that he would not be selected as the permanent CFO.  In or about January 2019, a new person took over the CFO position and LUTAMILA remained with IDB FCU until his employment ended in or about April 2019.

### COUNT ONE
### (Bank Fraud)

#### The Scheme to Defraud

3.     Beginning at least in or about November 2018, through at least in or about January 2019, in the District of Columbia and elsewhere, Defendant

### SALUSTHIAN LUTAMILA

knowingly executed a scheme or artifice to defraud IDB FCU by means of materially false and fraudulent pretenses, representations, and promises.

#### Purpose of the Scheme to Defraud

4.     It was the purpose of the scheme to defraud that Defendant LUTAMILA did transfer money without authorization from an IDB FCU account to LUTAMILA's account at E*Trade Financial Corporation ("E*Trade") in order to obtain money by fraud for Defendant LUTAMILA's personal benefit and use.

2

### Manner and Means

5.     Defendant LUTAMILA accomplished the purpose of the scheme to defraud by using the following manner and means, among others:

      a.  It was a part of the scheme to defraud that Defendant LUTAMILA directed an IDB FCU employee to reactivate a dormant IDB FCU internal operating account referred to as "Acceso."

      b.  It was a further part of the scheme to defraud that in or about November 2018, LUTAMILA opened a new account at E*Trade ("Account A").

      c.  It was a further part of the scheme to defraud that from in or about November 2018 through in or about January 2019, LUTAMILA caused approximately $610,000 to be transferred from several IDB FCU internal operating accounts into the Acceso account.

      d.  It was a further part of the scheme to defraud that from in or about November 2018 through in or about January 2019, LUTAMILA caused seven transfers totaling approximately $610,000 to be made from the Acceso account to Account A.

**(Bank Fraud, in violation of Title 18, United States Code, Section 1344(1))**

### COUNTS TWO THROUGH EIGHT
(Theft by Credit Union Employee)

6.     The Grand Jury re-alleges and incorporates by reference the allegations of paragraphs 1 through 5 of this Indictment as if fully set forth herein.

7.     On or about the dates listed below, in the District of Columbia and elsewhere, Defendant **LUTAMILA**, being an employee of IDB FCU, a financial institution with accounts insured by the National Credit Union Share Insurance Fund, with intent to injure and defraud IDB FCU, willfully misapplied, and embezzled, abstracted, and purloined an amount greater than $1,000 of the moneys, funds, and credits of IDB FCU belonging to such institution in that the

3

Defendant in the amounts and on or about the dates listed below transferred money from an internal IDB FCU account to Account A, a personal account at E*Trade owned and controlled by LUTAMILA:

| COUNT | ON OR ABOUT DATE | AMOUNT |
|-------|------------------|--------|
| TWO | November 16, 2018 | $94,829 |
| THREE | November 30, 2018 | $99,171 |
| FOUR | December 6, 2018 | $99,500 |
| FIVE | December 28, 2018 | $60,000 |
| SIX | January 14, 2019 | $99,500 |
| SEVEN | January 16, 2019 | $57,500 |
| EIGHT | January 22, 2019 | $99,500 |

**(Theft by Credit Union Employee, in violation of Title 18, United States Code, Section 657)**

### COUNTS NINE THROUGH FIFTEEN
### (Wire Fraud)

8.    The Grand Jury re-alleges and incorporates by reference the allegations of paragraphs 1 through 5 of this Indictment as if fully set forth herein.

9.    From at least in or about November 2018, through at least in or about January 2019, defendant **LUTAMILA** devised and intended to devise a scheme to defraud IDB FCU, and to

4

obtain money and property of IDB FCU by means of materially false and fraudulent pretenses, representations, and promises.

10.     On or about the dates listed below, in the District of Columbia and elsewhere, Defendant **LUTAMILA**, for the purpose of executing and attempting to execute the above-described scheme to defraud, did willfully cause to be transmitted by means of wire communication in interstate commerce from the District of Columbia certain writings, signals, and sounds, that is, the items listed below, each transaction constituting a separate count:

| <u>COUNT</u> | <u>ON OR ABOUT DATE</u> | <u>DESCRIPTION</u> |
|---|---|---|
| **NINE** | November 16, 2018 | ACH[1] transaction transferring $94,829 from Acceso to Account A |
| **TEN** | November 30, 2018 | ACH transaction transferring $99,171 from Acceso to Account A |
| **ELEVEN** | December 6, 2018 | ACH transaction transferring $99,500 from Acceso to Account A |
| **TWELVE** | December 28, 2018 | ACH transaction transferring $60,000 from Acceso to Account A |
| **THIRTEEN** | January 14, 2019 | ACH transaction transferring $99,500 from Acceso to Account A |
| **FOURTEEN** | January 16, 2019 | ACH transaction transferring $57,500 from Acceso to Account A |

---

[1] Automated clearing house ("ACH") is a network that coordinates electronic transactions between financial institutions.

5

| **FIFTEEN** | January 22, 2019 | ACH transaction transferring $99,500 from Acceso to Account A |
|---|---|---|

(Wire Fraud, in violation of Title 18, United States Code, Section 1343)

### COUNTS SIXTEEN THROUGH TWENTY-ONE
**(Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)**

11.     The Grand Jury re-alleges and incorporates by reference the allegations of paragraphs 1 through 5 of this Indictment as is fully set forth herein.

12.     On or about the dates set forth below, in the District of Columbia and elsewhere, Defendant **LUTAMILA** did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is a transfer or exchange of funds or monetary instruments, such property having been derived from a specified unlawful activity, that is, Bank Fraud, Wire Fraud, and Theft by Credit Union Employee, in violation of 18 U.S.C. §§ 657, 1343, and 1344.

| **COUNT** | **ON OR ABOUT DATE** | **DESCRIPTION** |
|---|---|---|
| **SIXTEEN** | November 26, 2018 | Transferred $40,000 from Account A to an account at another financial institution owned and controlled by LUTAMILA ("Account B") |
| **SEVENTEEN** | January 22, 2019 | Purchased $50,586.60 of stock using funds from Account A |
| **EIGHTEEN** | February 8, 2019 | Purchased $100,004.95 of stock using funds from Account A |

6

| NINETEEN | February 27, 2019 | Purchased $49,648.95 of stock using funds from Account A |
| TWENTY | March 14, 2019 | Purchased $13,034.75 of stock using funds from Account A |
| TWENTY-ONE | April 4, 2019 | Purchased $50,129.95 of stock using funds from Account A |

**(Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957)**

## FORFEITURE ALLEGATION

1.      Upon conviction of the offense alleged in Count One, the Defendant shall forfeit to the United States: a) any property constituting, or derived from, proceeds the Defendant obtained directly or indirectly, as the result of this offense, pursuant to 18 U.S.C. § 982(a)(2)(A); b) any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and c) any property, real or personal, involved in this offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1). The United States will also seek a forfeiture money judgment against the Defendant equal to the value of this property.

2.      Upon conviction of any of the offenses alleged in Counts Two through Fifteen, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the Defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to this offense.

7

3.      Upon conviction of any of the offenses alleged in Counts Sixteen through Twenty-One, the Defendant shall forfeit to the United States any property, real or personal, involved in this offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1). The United States will also seek a forfeiture money judgment against the Defendant equal to the value of any property, real or personal, involved in these offenses, or any property traceable to such property.

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be divided without difficulty;

the Defendant shall forfeit to the United States any other property of the Defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON

_Jessie K. Liu/MZ_

ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA

8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| UNITED SATES OF AMERICA, | ) | |
| | ) | Criminal No. 20-CR-24 (JEB) |
| v. | ) | |
| | ) | |
| SALUSTHIAN LUTAMILA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

From November 2018 through January 2019, Salusthian Lutamila repeatedly used his position of trust as Acting Chief Financial Officer ("CFO") to steal money from the small credit union that had employed him for years. Abusing the trust of those who worked side-by-side with him for years, Mr. Lutamila manipulated funds in the credit union's internal accounts and took $610,000 that did not belong to him. The government urges the Court to impose a Guidelines[1] compliant sentence of 51 months, impose a 3-year period of supervised release, order the Defendant to pay $76,069 in restitution, and enter a forfeiture order of $76,069 – a sum reflecting the unrecovered amount of money that he stole. As recommended by the presentence writer, the government also requests a restriction on the Defendant's work and volunteer activities while on supervised release, prohibiting from working in finance or accounting.

## I.   Relevant Procedural Background

On September 24, 2020, an arrest warrant was issued for the Defendant and he was arrested on October 2, 2019. On January 29, 2020, the United States of America filed a twenty-one-count

---

[1]     The United States Sentencing Commission, *Guidelines Manual* (2021) is referred to throughout this Memorandum as the "Sentencing Guidelines," "Guidelines," or "U.S.S.G."

indictment charging the Defendant with Bank Fraud (Count 1), Theft by Credit Union Employee (Counts 2 through 8), Wire Fraud (Counts 9 through 15), and Money Laundering (Counts 16 through 21) in violation of 18 U.S.C. §§ 657, 1343, 1344, and 1957, as well as a forfeiture allegation.  On May 9, 2022, trial in this matter began, with the jury ultimately convicting the Defendant of all counts on May 11, 2022.

## II.   **Factual Background**

### A.  Chronology of Relevant Events

The Inter-American Development Bank – IIC Federal Credit Union (hereinafter "IDB-FCU" or "the Credit Union") is a small credit union here in Washington, D.C., with about 50 employees, and around 10,000 credit union members all of whom are or were employees and families of people who work for the International Development Bank.  The Credit Union has only one office, located in Washington D.C., and provides loans, checking accounts, savings accounts, and other services to its members.  In November of 2016, the Credit Union hired Mr. Lutamila as the Controller.

Before joining the credit union as the Controller, Mr. Lutamila had a long history in finance and audit work.  He even worked for years as one of the lead auditors of the Credit Union.  In addition to leading audits of the Credit Union in that former position, he also led fraud investigations at credit unions.

After Mr. Lutamila joined the IDB-FCU as Controller, he was put in charge of the accounting and books for the Credit Union.  In May 2017, Mr. Lutamila was promoted to Director of Finance, i.e., the acting-CFO for the Credit Union.  Once he was promoted, Mr. Lutamila reported to the Chief Executive Officer ("CEO") and Board of Directors -- and was now in charge of all the finances and accounting for the Credit Union.

2

In August 2018, Mr. Lutamila was told by the CEO that he would not be hired as the CFO but was asked to stay on working at the Credit Union.

Around a month later, in September 2018, Mr. Lutamila assisted in the reactivation of a dormant internal checking account – called the Acceso account.   The Accesso account was an old inactive account that had not been actively used by the bank for years.  Because of the age of the account, it was not monitored or used, hence why it had become dormant.

Although he already had a separate retirement account with E-Trade, on November 8, 2018, Mr. Lutamila then opened a new E-Trade account.  In opening the E-Trade account, he certified that he would be using personal funds to fund the E-Trade account.  Around one week later, Mr. Lutamila made the first of a series of unauthorized transfers of money at the Credit Union -- where (without anyone knowing or authorizing it) he moved money from various internal accounts to the Accesso account and then illegally transferred that money to himself at the new E-Trade account he had set up.

Over two and a half months, Mr. Lutamila stole a total of $610,000 via seven unauthorized transfers of money to his account from November 2018 to January 2019.  Specifically, the seven thefts occurred as follows:

Theft 1:

- On Wednesday, November 14, 2018, at 7:13 p.m., Mr. Lutamila made an unauthorized transfer of $94,829 from an internal Credit Union operating account to the Accesso Account.

- The next day, on Thursday, November 15, 2018, without authorization, Mr. Lutamila linked his personal E-Trade account to the Credit Union's Accesso account.

- On Friday, November 16, 2018, around 12:10 p.m., Mr. Lutamila then stole $94,829 from the Credit Union by transferring it from the Accesso account to his personal E-Trade account without authorization.

Theft 2:

- On Wednesday, November 21, 2018, at 4:13 p.m., Mr. Lutamila made an unauthorized transfer of $99,171 from an internal Credit Union operating account to the Accesso Account.

- On Friday, November 30, 2018, at 2:18 p.m., Mr. Lutamila then stole $99,171 from the Credit Union by transferring it from the Accesso account to his personal E-Trade account without authorization.

Theft 3:

- On Wednesday, November 28, 2018, at 2:46 p.m., Mr. Lutamila made an unauthorized transfer of $99,500 from an internal Credit Union operating account to the Accesso Account.

- On Thursday, December 6, 2018, at 1:29 p.m., Mr. Lutamila then stole $99,500 from the Credit Union by transferring it from the Accesso account to his personal E-Trade account without authorization.

Theft 4:

- On Friday, December 28, 2018, at 1:55 p.m., Mr. Lutamila made an unauthorized transfer of $60,000 from an internal Credit Union operating account to the Accesso Account.

- That same day, on Friday, December 28, 2018, at 1:58 p.m., Mr. Lutamila then stole $60,000 from the Credit Union by transferring it from the Accesso account to his personal E-Trade account without authorization.

Theft 5:

- On Monday, January 14, 2019, at 1:14 p.m., Mr. Lutamila made five different unauthorized transfers totaling $99,500 from different internal Credit Union operating accounts to the Accesso Account.

- That same day, on Monday, January 14, 2019, at 1:18 p.m., Mr. Lutamila then stole $99,500 from the Credit Union by transferring it from the Accesso account to his personal E-Trade account without authorization.

Theft 6:

- On Wednesday, January 16, 2019, at 1:17 p.m., Mr. Lutamila made five different unauthorized transfers totaling $57,500 from different internal Credit Union operating accounts to the Accesso Account.

- That same day, on Wednesday, January 16, 2019, at 2:50 p.m., Mr. Lutamila then stole $57,500 from the Credit Union by transferring it from the Accesso account to his personal E-Trade account without authorization.

Theft 7:

- On Friday, January 18, 2019, at 1:51 p.m., Mr. Lutamila made five different unauthorized transfers totaling $99,500 from different internal Credit Union operating accounts to the Accesso Account.

- On Tuesday, January 22, 2019, at 10:19 a.m., Mr. Lutamila then stole $99,500 from the Credit Union by transferring it from the Accesso account to his personal E-Trade account without authorization.

Mr. Lutamila conducted his two-month long theft of $610,000 from the Credit Union's internal operating accounts while sitting in an office just a few doors down from those whose trust he was betraying.   He stole this money despite the fact that this small credit union had been his professional home for two years.

Mr. Lutamila used the money he stole to transfer money to his personal checking account, to fund his personal retirement account, to pay off his car.  For example, as shown in Government Exhibit 06-01, p. 9-10, on November 26, 2018, he transferred $40,000 of the stolen money from that E-Trade account to his Citibank checking account.  He then used that money to pay off a Discover credit card, transfer money to a Bank of America account, pay off his car, and pay off something at Lowes.  (Although the transfers were broken up into smaller amounts than that $40,000 initial transfer, between November 2018 and April 2019, Mr. Lutamila subsequently made additional transfers of the stolen money to his Citibank checking account, totaling around $15,000, as outlined in Government Exhibit 06-01.)  Similarly, in December of 2018, he took $28,162 from of the stolen money and moved it into his pre-existing retirement account at E-Trade, as shown in government Exhibits 05-13 and 05-04.

However, the primary way Mr. Lutamila spent the stolen money was by purchasing stocks stock in major companies.  Included among the many different purchases he made with the stolen money were six financial transactions of over $10,000, including:

- January 22, 2019 – Using the stolen money to purchase of $50,586.60 of stock in Regeneron Pharmaceuticals, Inc.:

- February 8, 2019 – Using the stolen money to purchase of $100,004.95 of stock in Regeneron Pharmaceuticals, Inc.;

- February 27, 2019 – Using the stolen money to purchase of $49,648.95 of stock in Micron Technology, Inc.;

- March 14, 2019 – Using the stolen money to purchase of $13,034.76 of stock in Stamps.com, Inc.; and

- April 4, 2019 – Using the stolen money to purchase of $50,129.95 of stock in Regeneron Pharmaceuticals, Inc.

Mr. Lutamila only stopped stealing money when the new CFO, Ms. Quinn, began at the company and someone was finally looking over his shoulder.  Then in April 2018, shortly before Mr. Lutamila was set to leave the Credit Union (having offered his resignation the same day that the new CFO began) the new CFO uncovered his embezzlement.  Through a stroke of luck and the hard work of the new CFO, Mr. Lutamila's crimes were found out.   Thankfully, because of the swift actions by the Credit Union, as testified to at trial, the Credit Union was able to recover all but $76,069.63 of the money he stole.  That amount was then covered by their insurance policy with Travelers Casualty and Surety Company of America.

## III.   **Applicable Guidelines Range**

The government agrees with the calculation of the Guidelines in the Pre-Sentence Report, the Defendant's total offense level under the Guidelines is 24.  Based on a criminal history score of zero points (Criminal History Category I), that offense level calls for a sentence of 51 months to 63 months of incarceration for the lead charges of Bank Fraud.

**IV.   <u>Section 3553 Factors Weigh In Favor of the Recommended Sentence</u>**

"A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence . . . [T]he correct [approach] . . . is to evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)." *United States v. Pickett*, 475 F.3d 1347, 1353 (D.C. Cir. 2007); *see also United States v. Terrell*, 696 F.3d 1257, 1261-62 (D.C. Cir. 2012); *cf. Rita v. United States*, 551 U.S. 338, 351 (2007) (holding that a within- Guidelines sentence may be presumed reasonable on appeal).  Pursuant to 18 U.S.C. § 3553(a), in determining the particular sentence to be imposed, the Court is to consider, *inter alia*:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> > (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B)  to afford adequate deterrence to criminal conduct;
> > (C)  to protect the public from further crimes of the defendant; and
> > (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> . . .
> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "The district court is not required to refer specifically 'to *each* factor listed in § 3553(a),' nor is it required 'to explain sua sponte why it did not find [a particular] factor

relevant to its discretionary decision' if 'a defendant has not asserted the import of [that] factor.'"

*United States v. Bras*, 483 F.3d 103, 113 (D.C. Cir. 2007) (quoting *United States v. Simpson*, 430

F.3d 1177, 1186-87 (D.C. Cir. 2005)).  The Court must impose a sentence sufficient, but not greater

than necessary, to comply with 18 U.S.C. § 3553(a).

A.  <u>Nature and Seriousness of Offense</u>

In fashioning a reasonable sentence pursuant to 18 U.S.C. § 3553(a)(1), the Court must

consider the nature and circumstances of the offense. The long-term nature of this fraud scheme,

and the fact that it was done from a position of trust supports the imposition of a significant period

of incarceration.

1.     *Role in the Offense*

Mr. Lutamila was the acting CFO of the Credit Union when he embezzled the money at

issue.  Mr. Lutamila was not just a bank teller that slipped a few dollars from the till.  To the

contrary, at the time of his embezzlement, he was the one in charge of the financial systems and

the person trusted to ensure its integrity.  Indeed, he knew the Credit Union's financial system

better than anyone else, having worked there for years.   Not just that, he had special skills that

further enhanced his ability to commit this crime – not only having been the one to lead audits of

the Credit Union in the past but also having led fraud investigations before.  (The Defendant was

even credentialed as a Certified Fraud Examiner ("CFE") in 2004, as indicated on his resume,

which was entered as Exhibit 13-01.)  Thus, he knew exactly how to avoid getting caught and

used those special skills and his high position at the Credit Union to commit the crime.  He knew

which accounts he could siphon money from or backfill without it being noticed, he knew what

dormant checking account could be used without being noticed, he knew that the internal

documentation of transfers to E-Trade idiosyncratically did not list the name of the owner of the

E-Trade account (making it harder for someone reviewing the accounts to realize he was sending money to himself), and, most importantly, he knew nobody was watching because he was the one that was supposed to be monitoring the financial controls. His background and role as acting CFO left him perfectly poised to commit a difficult-to-detect wrong.

Mr. Lutamila took advantage of the trust put in him by the Board, the CEO, the leadership team, and all those who he supervised in the finance department. His deception ran deep. Although the Credit Union was eventually made somewhat whole through its own diligence and insurance, the cost of Mr. Lutamila's theft was still very real. His actions were a betrayal of trust – plain and simple. The sentence imposed should reflect that betrayal of trust, use of special skills, and abuse of his elevated position.

### 2.    *Duration of the Offense*

The Defendant spent months conducting this crime. It was not just a one-day occurrence or a bad, spontaneous mistake. He went to work every day for months while repeatedly taking all the steps needed to complete this crime. He worked side-by-side with the people he was betraying for months, as he repeatedly took these steps. The Defendant was methodical, purposeful, and careful. On November 8, 2018, he opened a new E-Trade account specifically to use it for this fraud. Around a week later, on November 14th, he made the first transfer from internal accounts to the formerly dormant Accesso checking account. Then next day, he linked that new E-Trade account to the Acceso account. The next day, around noon on November 16th, he then conducted the first theft, transferring over $94,000 to that new E-Trade account. The Defendant then continued this step-by-step scheme over the next two months.

Mr. Lutamila was slow and careful. He had time to think about what he was doing, time to reflect on his actions, and time to understand exactly who he was betraying. He did it anyway.

The behavior in this case was not an aberration.  It was part of an on-going fraudulent scheme that spanned months.  The Defendant's actions over that two-month period were not just one single bad decision or a moment of rash behavior. This behavior was deliberate, repetitive, and ongoing.

### B. <u>History and Characteristics of the Defendant</u>

The Defendant has no criminal convictions, has a record of employment and education, and has a stable life.  In addition, the Defendant has had charges pending in this case since 2020 and has abided by his release conditions and complied with all requirements.  All these points weigh in favor of a more lenient sentence.

On the other hand, the Defendant's situation has been stable like this for a long time, and, despite this stable background, he still chose to engage in this fraudulent scheme over a period of years.  The Defendant has been granted numerous benefits in life, including a stable professional career spanning over twenty years,  a series of educational achievements, including an MBA and accounting degrees (including as a certified fraud examiner) -- yet he chose to commit (and continue committing) this crime nonetheless.  In short, unlike so many defendants that come before this court, Mr. Lutamila had everything going for him and no mitigating circumstances in his past that would put this criminal conduct into at least a more sympathetic light.

Finally, as mentioned in its objection to the presentence report, the government is concerned that the Defendant was not forthcoming with the probation officer about all of his financial accounts.  As detailed in the objection, at least during 2018 and 2019, Mr. Lutamila had multiple additional accounts that were not listed in the report– including ones from which he regularly received very large sums in the $20,000 – 50,000 range (such as the PMMA account, Discover account, and Sogo Asset Management account).  Although after the government's

objection, the Defendant apparently told the presentence writer that those accounts did not have anything in them or were no longer active, the government would have more confidence in those claims if he actually provided documentation of those prior accounts, their close out dates, and the remaining balances (if any) to the probation officer.  Similarly, he claimed that he simply did not mention his retirement account, that contained a little over $90,000, because he did not have access to that information.  However, that explanation rings hollow, particularly given that he had reached out to the Credit Union to have the money rolled over to an IRA around the same time that the report was being written.  His explanation for not self-reporting the retirement account to the probation officer simply does not make sense.  Overall, it appears as if he has not been completely forthcoming about his financial assets.

### C. **Deterrence**

As the Sixth and Eleventh Circuits have found, because white collar crimes "are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) (internal citations omitted); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (using language identical to that in *Musgrave*).

Financial fraud has been, and continues to be, a substantial problem both nationwide and in the District.  Those who participate in this sort of white-collar crime undoubtedly monitor the cases of others charged with similar crimes and weigh the costs of a potential prison sentence against the benefits of their potential ill-gotten gains.  Thus, sentences that include a meaningful period of incarceration do serve a legitimate deterrent purpose.

Deterrence in fraud cases is perhaps the most important factor of all of the § 3553(a) factors.  The federal government and the D.C. government simply do not have the resources to

investigate every allegation of fraud.  The sentence in this case must, therefore, be sufficiently severe to deter fraud by other unscrupulous individuals working in the financial sector.  The message should be clear and unambiguous -- fraud is not tolerated, and if the fraudulent conduct is discovered, the punishment will be just, appropriate, and severe enough to counter the damage that the fraudulent conduct has caused.  A conviction without serious punishment is no deterrent at all.  Indeed, a conviction without a lengthy period of incarceration for such an abuse of trust at a financial institution will only invite imitators.

## V.   <u>Conclusion</u>

The United States respectfully requests that the Defendant's punishment reflect the need to promote respect for the laws that protect the public and guard against financial fraud by those in positions of power.

For the reasons set forth above, the United States requests this Court to (1) impose a sentence of 51 months of incarceration; (2) impose a term of supervised release of 3 years; (3) order the Defendant to pay restitution in the amount of $76,069; and (4) enter a forfeiture order of $76,069 – a sum reflecting the unrecovered amount of money that he stole.   In addition, the government also requests a restriction on the Defendant's work and volunteer activities while on supervised release, prohibiting him from working in finance or accounting.

Such a sentence reflects the seriousness of the offense and provides effective specific and general deterrence.

Respectfully submitted,

<u>/s/ *Melissa Jackson*</u>
Melissa Jackson (D.C. Bar No. 996787)
Assistant U.S. Attorney
Fraud Section

U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, DC 20530
(202) 252-7786
Melissa.Jackson@usdoj.gov

14

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          )

            v.          )          CR. NO. 20-CR-024 (JEB)

SALUTHIAN LUTAMILA          )

_____)

### MEMORANDUM IN AID OF SENTENCING

**"The true measure of our character is how we treat the poor, the disfavored, the accused, the incarcerated, and the condemned."**

Bryan Stevenson

Growing up in rural Tanzania, Mr. Saluthian Lutamila spent many of his young years working the farmland alongside his father Yegela and his mother Joyce. Joyce never could have imagined that one day her son would be a financial executive working for a credit union, dutifully sending financial support from America to his entire family back home. Mr. Lutamila's story is that of a model immigrant turned naturalized US citizen who did it the right way; a driven and devoted man who has dedicated his life to supporting his family; a taxpayer and homeowner who kept meticulous records and paid his obligations; and a financial employee who made a grave mistake that he will regret for the rest of his life.

Now, his family will suffer the most when he is incarcerated. Mr. Lutamila is a father of three children, his youngest being six years old. He loves his family dearly. They are his motivation to be the industrious worker that he has always been. He speaks to them every other day and regularly sends them money for their needs. Tanzania is the largest East African country and it suffers from "food scarcity, poor access to education and inadequate health care access."[i] Hence, Mr. Lutamila's family depends on him to survive. His biggest concern is the welfare of his 6 year old son. Mr. Lutamila does not want his son to live the rural impoverished farm life, which he lived as a young child.

In *Just Mercy: A Story of Justice and Redemption*, Bryan Stevenson stated, "[e]ach of us is more than the worst thing we've ever done." The § 3553(a) factors recognize this because it requires the Court to examine the history and characteristics of the defendant. While the U.S. Sentencing Guidelines recommend

a certain sentence based on criminal history and offense level, courts have in most cases given lower than guideline sentences in fraud cases. Those defendants were more than the offenses they committed.

Saluthian Lutamila, through undersigned counsel, hereby respectfully submits this Sentencing Memorandum. He respectfully requests a sentence of 12 months and 1 day, for three reasons. First, the current fraud sentencing guidelines are flawed because it was the U.S. Sentencing Commission's attempt to address high-profile fraud without empirical data to support tougher sentences. Second, courts have rejected the fraud guidelines by examining other ways to comply with the directives of 18 U.S.C. § 3553(a) without anchoring sentences on the guidelines. Third, departures are warranted here because of Mr. Lutamila's remarkable work history and pretrial compliance for the last three years and because of his extraordinary family circumstances.

## Case Background

On September 24, 2019, a criminal complaint was filed against Mr. Lutamila, charging him with one count of Wire Fraud, in violation of 18 U.S.C. § 1343. On October 2, 2019, Mr. Lutamila was arrested and released on his personal recognizance at the initial appearance before the magistrate judge. The parties were not able to resolve the case by the end of the year and the government sought an indictment. On January 29, 2019, an indictment was filed against Mr. Lutamila charging him with 21 counts of Bank Fraud, Theft by Credit Union Employee, Engaging in Monetary Transactions in Property Derived from Specified Unlawful

Activity, in violation of 18 U.S.C. §§ 657, 1343, 1344, and 1957.  The conduct involved seven transfers of money from a dormant credit union account to Mr. Lutamila's E*Trade account.

The parties continued to discuss a pre-trial resolution; however, it became apparent that evidence needed to be obtained from the Credit Union directly since it had not been provided by the government; hence, subpoenas were issued.

This Honorable Court set the case for trial on November 30, 2021.  In an effort to ensure Mr. Lutamila's constitutional right to a fair trial, the defense filed a motion staying trial pending resolution of fair cross-section issues on November 27, 2021.  Such a motion could only be filed prior to trial.  This Honorable Court granted the motion and vacated the trial date.  As a result of the motion, the Jury Office became aware that District of Columbia taxpayers' records, from a specified time period, were not properly included in the source list used to create the master jury wheel.  The Jury Office replaced the master wheel with a new wheel, thereby improving the administration of justice in this Court.

Trial began on May 9, 2022 and ended on May 11, 2022, resulting in a guilty verdict.  Mr. Lutamila remained released on his personal recognizances.

## **Sentencing Law**

### **1. History – From unfettered discretion to Guideline bound.**

For 200 years, federal judges had wide discretion when it came to sentencing and could sentence how they saw fit and "there was virtually no appellate review of the trial judge's exercise of sentencing discretion."[1]  Former federal judge, Marvin E. Frankel was the "most influential critic[] of indeterminate federal sentencing" and in 1972, he published a "forceful …. indictment of the sentencing authority he himself exercised--powers which he described as 'almost wholly unchecked and sweeping' and which he found 'terrifying and intolerable for a society that professes devotion to the rule of law.'"[2]  Judge Frankel called for a "Commission on Sentencing" and the enactment of laws to make guidelines that would be "binding" on federal judges.[3]  Congress answered Judge Frankel's call and in 1984 the Sentencing Commission was born.  For decades, the U.S. Sentencing Guidelines were binding.

The era of binding guidelines ended in 2005, when the Supreme Court held that "the Federal Sentencing Reform Act of 1984…ma[de] the Guidelines effectively **advisory**."[4]  Under *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."[5]   While holding that district courts should still consider the

---

[1] Kate Stith & Steve Y. Koh, *The Politics of Sentencing Reform: The Legislative History of the Federal Sentencing Guidelines*, 28 WAKE FOREST L. REV. 223, 225 (1993).
[2] *Id.* at 228.
[3] *Id.* at 228.
[4] *United States v. Booker*, 543 U.S. 220, 245 (2005) (emphasis added)
[5] *Id.* at 264 (citing *See* 18 U.S.C. §§ 3553(a)(4), (5)).

Guideline calculations and ranges for sentencing purposes, the Supreme Court in *Booker* held that courts must consider <u>all</u> the purposes of sentencing set forth in 18 U.S.C. § 3553(a).   Overall, in light of *Booker*, courts must treat the Guidelines as <u>one</u> among several of the sentencing factors.

18 U.S.C. § 3553(a) provides that the Court must consider:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for—

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines— (i)issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; …

    (5) any pertinent policy statement— …

6

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Several years after *Booker*, the Supreme Court made clear that the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'"[6] to comply with "the four identified purposes of sentencing:  just punishment, deterrence, protection of the public, and rehabilitation."[7]  In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth.[8]

Congress has further provided that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.**[9]

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "**sufficient, but not greater than necessary**, to comply with the purposes [of sentencing]."[10]

---

[6] *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)).
[7] *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2).
[8] 18 U.S.C. § 3661.
[9] 18 U.S.C. § 3582(a) (emphasis added).
[10] *Id*. § 3553(a) (emphasis added).

7

**2. The Sentencing Guidelines are *only one factor*, thus Courts must not anchor themselves to the Guidelines.**

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors.[11]   A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range.[12]   The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable.[13]   By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure."[14]

It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court has long emphasized that "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'"[15]   "But if judges are

---

[11] *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007).
[12] *Rita*, 551 U.S. at 338; *Gall*, 552 U.S. at 46.
[13] *Id.*
[14] *Rita*, 551 U.S. at 351.
[15] *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

not careful, a rote application of the Guidelines can turn what is often a life-defining moment for the defendant into a check-the-box, formulaic calculation devoid of the individualized sentencing we strive for."[16]

Overall, judges are encouraged to resist "anchoring" the sentence on the guideline numbers. "Anchoring is a cognitive bias that describes the human tendency to adjust judgments or assessments higher or lower based on previously disclosed external information - the 'anchor.' Studies demonstrate 'that decisionmakers tend to focus their attention on the anchor value and to adjust insufficiently to account for new information.'"[17]

> It is important to distinguish the guidelines' intended, salutary effect - promoting consistency and proportionality in sentencing - from the unintended anchoring effect that the guidelines can exert. … Anchoring leads to cognitive error not insofar as judges intentionally use the guidelines in an advisory fashion, but instead when judges irrationally assign too much weight to the guidelines range, just because it offers some initial numbers.[18]

Another reason to resist anchoring a sentence to the Guidelines is that the guidelines are not always based on empirical data.  "A district court may deviate from a sentencing guideline where empirical data shows that adherence to it would

---

[16] *United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at *4-5 (D. Md. Feb. 18, 2020)

[17] Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Sot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 495 (2014) (citations omitted).

[18] *Id.* at 524 (inner quotation marks and citation omitted); *see also United States v. Docampo*, 573 F.3d 1091, 1105 n.5 (11th Cir. 2009) (Barkett, J., concurring and dissenting) ("Not only have district courts now become used to relying on [the Guidelines], but the Guidelines inevitably have a considerable anchoring effect on a district court's analysis").

yield a sentence that is 'greater than necessary.'"[19]

### 3. Courts still anchor sentences to the guidelines even after the Supreme Court has held the guidelines are advisory.

Seven years after *Booker*, the Commission analyzed sentencing practices and found that courts still give guideline sentences.  In 2012, the Commission stated that the guidelines "remained the essential starting point in all federal sentences and . . . **continued to exert significant influence on federal sentencing trends over time.**"[20]  Courts must be concerned whether the guidelines are "truly *advisory*"[21] if they still "exert a significant influence over sentencing."[22]  In addition, courts should have grave concerns about the guidelines when the sentencing structure is not based on empirical data.[23]

### 4. The Fraud Guidelines are not consistent with empirical data.

The Supreme Court has explained that the U.S. Sentencing Commission "fills an important institutional role…to 'base its determinations on empirical data and national experience.'"[24]  However, when the Commission fails to base guidelines on empirical data and national experience, the district court may determine that a

---

[19] *United States v. Price*, 649 F.3d 857, 860 (8th Cir. 2011) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007)).

[20] U.S. Sentencing Comm'n, *Report on the Continuing Impact of United States v. Booker on Federal Sentencing* (2012), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/booker-reports/2012-booker/Part_A.pdf. [hereinafter 2012 Booker Report] (emphasis added).

[21] *United States v. Gardellini*, 545 F.3d 1089, 1096 (2008) ("The central teaching of Gall is that the Guidelines are truly advisory.").

[22] 2012 Booker Report, *supra* note 19.

[23] *See Price*, 649 F.3d at 860.

[24] *Kimbrough*, 552 U.S. at 109 (citation omitted).

guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."[25]

The fraud guidelines were "partly mandated by Congress, reacting in turn to public outcry over such massive frauds as Enron and WorldCom."[26]

> [I]n implementing the Congressional mandate, the Sentencing Commission chose to focus largely on a single factor as the basis for enhanced punishment: the amount of monetary loss or gain occasioned by the offense. By making a Guidelines sentence turn, for all practical purposes, on this single factor, the Sentencing Commission effectively ignored the statutory requirement that federal sentencing take many factors into account, *see* 18 U.S.C. § 3553(a), and, by contrast, **effectively guaranteed that many such sentences would be irrational on their face.**[27]

After the Sentencing Reform Act of 1984, the Commission complied data on prior sentencing practices in white-collar cases and found that many defendants received probation.[28]  The Commission still proceeded with increasing the penalties in white-collar offenses even though the vast majority of judges "did not want to see

---

[25] *Id.* at 110.

[26] *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012).

[27] *Id.* (emphasis added) (sentencing defendant to 24 months incarceration where the calculated gain was $15 million.)

[28] *See* U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform*, at vi (2004), found at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf , last accessed on Sept. 14, 2022 ("Some of the decrease in the use of simple probation following implementation of the guidelines is explained by increased use of intermediate sanctions, especially for "white collar" crimes. These offenders historically were more likely to receive simple probation, but under the guidelines they increasingly are subject to intermediate sanctions, such as home or community confinement or weekends in prison, and imprisonment.")

[the availability of alternative confinement sentencing options] reduced."[29]  The Commission recognized that "[s]lightly more than 40 percent of both responding district and circuit court judges also would like greater availability of sentencing options (particularly **probation-plus-confinement or "split" sentences**) for **theft and fraud offenses**."[30]

"Over the years, Congress mandated adjustments of increasing severity to the Guidelines sentences for fraud."[31]  The Commission followed suit, yet failed to make changes in response to empirical data, which is its primary function.

<u>Argument</u>

For the following reasons, a sentence of 12 months and 1 day is the only sentence that is not greater than necessary, yet sufficient, for the purposes of sentencing.

## I.    The Nature and Circumstances of the Offense

The details of the nature and circumstances of the offense played out in trial. The defense did not dispute that the transactions took place.  Instead, the parties disagreed on intent.   On November 1, 2016, Mr. Lutamila was hired at the credit union as a controller in the finance department, ran by the then-CFO Cindy Morgan.  Months later, Ms. Morgan resigned.  On May 19, 2017, CEO Chip Lusk promoted Mr. Lutamila to Director of Finance.  The credit union began the CFO right after Cindy Morgan left.  While the credit union conducted its search, Mr.

---

[29] *Id.* at 4.
[30] *Id.*
[31] *United States v. Herink*, No. 8:10CR169, 2012 U.S. Dist. LEXIS 105549, at *13 (D. Neb. July 30, 2012).

Lutamila served as Acting CFO in the interim.  He also participated in the search for the CFO and in interviews.  He also remained the Director of Finance.  The credit union documents showed that Mr. Lutamila remained as Director of Finance through the April 2019 audit.

Lusk and Mr. Lutamila worked closely together.  As a former CFO himself, and as the CEO, Lusk was aware of the financial state of the credit union.  Mr. Lutamila reported directly to Lusk from May 2017 to April 2019.  Lusk, however, was only willing to admit that he worked closely with Mr. Lutamila in training him to improve his communication skills to be the CFO.  This was central to the government's claim that Mr. Lutamila was angry that he did not get the permanent CFO position.  However, three months lapsed between August 30, 2018, when Mr. Lutamila was informed that he would not be the CFO, and November 2018, when the first transfer was made.

The jury did not accept the government's claim of Mr. Lutamila being bent on revenge.  He was polite and well-received by his colleagues and was a hard worker.  Instead, the jury accepted that Mr. Lutamila transferred the money from the Accesso account to his E-Trade account, which the defense did not dispute.   Some jurors believed that Lusk had to be aware of the transactions.

## II.    Mr. Lutamila's History and Characteristics

Mr. Lutamila was born in Tanzania in 1968.  His childhood was not carefree and involved a great deal of hard farm labor compared to the typical American childhood at that time.  He grew up with six siblings, a large family by America

13

standards.  His father died in 1980, when Mr. Lutamila was young.  He is not sure of the cause of death.  His mother died in 1995 from a car accident.  His eldest sister Mbula passed away some time ago.  His eldest brother Solomon passed away last year of respiratory and breathing issues, possibly from Covid-19, for which he never received a diagnosis.  In a struggling third world country like Tanzania, there is no robust managed health care system, no annual doctor's appointments, no cancer screenings, no health care checkups, especially when you are poor.  "Tanzania is a resource strained country with a weak healthcare system which is challenged by high maternal mortality, child mortality, HIV/AIDS, pneumonia, and malaria."[32] So when people pass away, the cause of death may be unknown.

Seeking to expand his horizons from his rural upbringing, Mr. Lutamila attended Mzumbe University and received a Bachelor's of Science degree. Shortly afterwards, Mr. Lutamila immigrated to the United States, where he entered lawfully in 2000 on an L-1 work visa.  He lived in New York for a time before relocating to Washington, D.C. and ultimately Maryland, where he has been a taxpayer and property owner for the last 17 years.  Mr. Lutamila attended the City University of New York's Baruch College where he received his Masters of Science in Business Administration and later was granted his Certified Public Accountant (CPA) license in the same year in Virginia in 2003.

---

[32] U.S. Dep't of Commerce, International Trade Administration, Tanzania – Country Commercial Trade Guide.  Last published date, Dec. 2, 2021, available at https://www.trade.gov/country-commercial-guides/tanzania-healthcare#:~:text=Health%20insurance%20coverage%20is%20still,pharmaceutical%20factories%20within%20the%20country (last accessed on Sept. 13, 2022).

For the better part of the next two decades, Mr. Lutamila lived a quiet and productive life. Using his skills in mathematics, his CPA, and his degree in Business Administration, Mr. Lutamila obtained a series of upwardly mobile jobs that allowed him to send even more money to support his family in Tanzania while also building a life for himself here in the United States.  He was married and later peacefully divorced. He realized the American dream of home ownership in 2005, purchasing a modest townhouse in Hyattsville, MD for which he still pays a monthly mortgage and property taxes now 17 years later. In July of 2014, Mr. Lutamila became a naturalized U.S. citizen.

Despite his circumstances, Mr. Lutamila has never been one to stop fighting to improve his life and the lives of those around him. He continues to support his family in Tanzania with his labor. Due to the instant offense, Mr. Lutamila is no longer able to work in the field to which he dedicated his life, nor will he ever be able to do so again. No longer able to provide for his loved ones with the product of his decades of study and innate mathematical abilities, Mr. Lutamila now labors with his body and personal vehicle instead.  In the period since he was charged with this offense, Mr. Lutamila has worked for a variety of "gig economy" rideshare services.

Mr. Lutamila has made mistakes, and while he still maintains that he never intended to defraud the credit union, never intended to cheat the credit union, and never intended to use that money for illegal activities, he acknowledges that he has been found guilty by a jury of his peers and will abide by the sentence handed down

15

by the court and make restitutions as he is ordered to do so. Mr. Lutamila

respectfully ask the court to sentence him with these facts in mind.

### III. The Purpose of Sentencing Will be Accomplished with a Sentence of 12 Months and 1 Day.

The Court is required to "impose a sentence sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph (2) of this

subsection."[33]

### A. The Requested Sentence Would Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

18 U.S.C. § 3553(a)(2)(A) provides that the Court must assess "the need for

the sentence imposed— . . . to reflect the seriousness of the offense, to promote

respect for the law, and to provide just punishment for the offense."  Incarceration is

not required in order for a sentence to reflect the seriousness of the offense.  "A

sentence of probation rather than incarceration can work to promote the sentencing

goal of respect for the law by illustrating a rejection of the view that the law is

merely a means to dispense harsh punishment without taking into account the real

conduct and circumstances involved in sentencing."[34]

To determine a just punishment for Mr. Lutamila, the Court must consider

how he will serve his time.  Since the beginning of the COVID-19 pandemic,

inmates have served time under harsher conditions – movement is limited, visits

---

[33] 18 U.S.C. § 3553 (a).

[34] *United States v. Bennett*, No. 8:07CR235, 2008 U.S. Dist. LEXIS 45302, at *12 (D. Neb. May 30, 2008) (citing *Gall*, 552 U.S. at 99).

were suspended, and clients have been detained in the cells for a large majority of the day.  While the Bureau of Prisons has gone through several phases to modify restrictions on inmates, social visits are limited to maintain safety, and "[i]nmate movement in small numbers is authorized for…showers three times each week."[35] Thousands of BOP inmates have tested positive for COVID-19 and the latest BOP numbers show that 240 inmates have died from COVID-19.[36]  With the rise of COVID-19 variants, the risks of contracting the virus and death remain a serious concern for inmates.

### B.   The Requested Sentence Would Provide Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant.

Under 18 U.S.C. § 3553(a)(2)(B) and (a)(2)(C), this Court must also consider "the need for the sentence imposed—. . . to afford adequate deterrence to criminal conduct…[and] to protect the public from further crimes of the defendant."  The public will be protected while Mr. Lutamila serves the requested sentence.  The instant offense involved Mr. Lutamila's conduct with his former employer.  He has been on pre-trial release for nearly 3 years.  Since this case has been pending, he has not committed another offense.  Instead, he has continued to work hard to provide for his family, who depend on him.

While "[p]rison is an important option for incapacitating and punishing those

---

[35] *See* Fed. Bureau of Prisons, *BOP Modified Operations* (Updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed December 4, 2020).
[36] *See* Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed July 27, 2021).

who commit crimes," evidence suggests that lengthy prison sentences do not have a "chastening" effect and "produce at best a very modest deterrent effect."[37]   With respect to specific deterrence, research shows conclusively that "[t]he **certainty** of being caught is a vastly more powerful deterrent than the punishment," that "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime," and that "[i]ncreasing the severity of punishment does little to deter crime."[38]   "[A]cross all offenders, prisons do not have a specific deterrent effect. Custodial sentences [jail and prison] do not reduce recidivism more than noncustodial sanctions."[39]   A lengthy sentence of incarceration is not needed to deter criminal conduct in this case.

### C.   The Requested Sentence Would Provide Mr. Lutamila with the Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner.

Under 18 U.S.C. § 3553(a)(2)(D), this Court must also consider "the need for the sentence imposed—. . . to provide the defendant with needed. . . medical care. . . in the most effective manner."  Because of Mr. Lutamila's education, health, and lack of abuse history, an incarceration sentence would not necessarily address these needs..  The BOP notes that programing is only being offered "to the extent practicable" and that "[i]nstitutions with active COVID-19 cases may make

---

[37] *Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice, 1-2 (May 2016).

[38] *Id.* (emphasis in original).

[39] James Austin *et al.*, *How Many Americans Are Unnecessarily Incarcerated?*, Brennan Ctr. For Just., N.Y. Univ. School of Law, 22 (2016) (quoting a 2011 study by criminologists).

exceptions to these programming requirements for the safety of inmates and staff." [40] Undoubtedly, because of the pandemic, the conditions an inmate serves under now are harsher than they were before the pandemic.

## IV.   A 12 Month and 1 Day Sentence Properly Reflects § 3553(a) Considerations and Adheres to the Principle that this Court May Not Presume that a Guideline Sentence Is Reasonable.

When sentencing a defendant, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the Court to consider. [41]   As stated above, courts should resist anchoring a sentence to the guideline numbers. [42] Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. [43]  This Court may not presume that a Guideline sentence is reasonable and should, instead, consider whether or not the applicable Guidelines sentence properly reflects § 3553(a) considerations and whether "the case warrants a different sentence regardless." [44]  Indeed, "it remains the judge's duty to tailor every sentencing to the case and defendant at hand,"

---

[40] *See* Fed. Bureau of Prisons, *BOP Modified Operations* (Updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed December 4, 2020).
[41] *Kimbrough*, 552 U.S. at 90.
[42] *See Docampo*, 573 F.3d at 1105 n.5 (Barkett, J., concurring and dissenting) ("Not only have district courts now become used to relying on [the Guidelines], but the Guidelines inevitably have a considerable anchoring effect on a district court's analysis").
[43] *Rita*, 551 U.S. at 348, 350.
[44] *Id.* at 351.

regardless of the guidelines range.[45]  A U.S. District Court Judge explained the

following:

> During the sentencing hearing, the lawyers and the judge discuss the
> appropriate sentence, often at great length, but after the judge
> announces a decision, that judge, the lawyers, and the staff move on to
> the next case; the hearing and outcome soon fade into distant memory.
> Meanwhile, for the defendant, the torture of a monotonous existence
> begins, while life for his family moves forward without him. For him,
> every day, month and year that was added to the ultimate sentence
> will matter. The difference between ten and fifteen years may
> determine whether a parent sees his young child graduate from high
> school; the difference between ten and fifteen months may determine
> whether a son sees his sick parent before that parent passes away; the
> difference between probation and fifteen days may determine whether
> the defendant is able to maintain his employment and support his
> family. **Thus, it is crucial that judges give careful consideration
> to every minute that is added to a defendant's sentence.
> Liberty is the norm; every moment of incarceration should be
> justified.**[46]

The impact of a sentence on Mr. Lutamila's family should be strongly

considered here.  They have benefitted from his single-handed effort to obtain

the American dream, which many cannot attain.  His life now, being a

convicted felon, will never be the same.  At 53 years old, a lengthy sentence

will result in him being released in his late 50s, when it might be more

challenging to establish a new career and not very easy to return to the "gig

economy."

---

[45] *United States v. Sabillon-Umana*, 772 F.3d 1328, 1330 (10th Cir. 2014) (Gorsuch, J.)

[46] *United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at *3-4 (D. Md. Feb. 18, 2020) (emphasis added).

## A. Defense Request for A Downward Departure or Variance

As set forth in the PSR, the applicable Sentencing Guidelines range is 51-63 months based on 0 criminal history points and an offense level of 24. Mr. Lutamila requests that this Honorable Court vary outside of the guidelines in light of his history and characteristics and family needs to a sentence of 12 months and 1 day.

As stated above, Mr. Lutamila immigrated to the United States through a work visa. His entire family lives in Tanzania and are completely dependent upon him. He did not use any of the transferred from the credit union to send to Tanzania, where undoubtedly his family would have benefited and lived a lavish life. After being convicted and losing the driving job, Mr. Lutamila found other ridesharing services to work at in order to generate income to provide for his family. A lengthy incarceration will only further plunge his family into financial despair and set his young son back from receiving a solid education.

To properly "calibrate a 'just sentence,'" a court must "consider the collateral effects of a particular sentence."[47] Mr. Lutamila's life will be forever changed because he will no longer be able to work in his field. As a Certified Public Accountant, he will not be able to renew his license and work as an accountant, which is reason to depart or vary down the guidelines. *See, e.g., United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) (finding that the district court in a terrorism case appropriately considered that the "conviction itself already visit[ed] substantial punishment" on defendant by possibly preventing him from future work

---

[47] *United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009).

in his profession) (internal quotation marks omitted); *United States v. Virgil*, 476 F. Supp. 2d 1231, 1315 (D.N.M. 2007) (finding variance appropriate by noting that the defendant "was forced to resign his position as State Treasurer" and "suffered incalculable damage to his personal and professional reputation as a result of tremendous media coverage of his case.").

A downward departure is also warranted here because of Mr. Lutamila's exceptional work history.  He came to the United States on work visa in 2000 and worked while he pursed his Masters and was continuously since then.  *See United States v. Jones*, 158 F.3d 492, 498 (10th Cir. 1998) ("The district court considered Mr. Jones' employment history and the impact of incarceration on his prospects for future employment in light of the community in which he lives, an economically depressed area. While rejecting their application under the facts of *Koon*, the Supreme Court gave its approval to the district court's consideration of collateral employment consequences in the decision to depart.  We find nothing in the Guidelines to suggest the Sentencing Commission either intended to proscribe consideration of or fully considered such factors.")(citations omitted).

## B. The Fraud Guidelines are not consistent with Empirical Data; hence Courts resist anchoring sentences to them.

As stated above, the increase of the fraud guidelines are not based on empirical data.  The Sentencing Commission "'has never explained the rationale underlying any of its identified specific offense characteristics, why it has elected to identify certain characteristics and not others, or the weights it has chosen to assign to each

identified characteristic.'"[48]  For example, there is nothing to indicate that white-collar defendants have a tendency to commit violent offenses to justify a harsher sentence.  Furthermore, the loss table amounts are not indicative of culpability or seriousness of the offense.  "For example, the guidelines treat a person who steals $100,000 to finance a lavish lifestyle the same as someone who steals the same amount to pay for an operation for a sick child."[49]  In several cases, "the amount stolen is a relatively weak indicator of the moral seriousness of the offense or the need for deterrence."[50]

The defense submits that if the starting point is guidelines, and the guidelines are flawed, then the court must deviate from that starting point.[51]  One way to deviate from that starting point is to consider the guidelines when the Commission used empirical data for the fraud guidelines.  If the Court were to use the sentencing guidelines when the Commission relied on empirical data and when the sentencing guidelines were mandatory, Mr. Lutamila's guideline range would be 21-27 months.

---

[48] *United States v. Adelson*, 441 F. Supp. 2d 506, 510 (S.D.N.Y. 2006).
[49] United States v. Ranum, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005).
[50] *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004).

[51] *See Price*, 649 F.3d at 860.

**§2B1.1.   Larceny, Embezzlement, and Other Forms of Theft**

(a)   Base Offense Level: **4**

(b)   Specific Offense Characteristics

(1)   If the value of the property taken exceeded $100, increase the offense level as follows:

| | Loss | Increase in Level |
|---|---|---|
| (A) | $100 or less | no increase |
| (B) | $101 - $1,000 | add **1** |
| (C) | $1,001 - $2,000 | add **2** |
| (D) | $2,001 - $5,000 | add **3** |
| (E) | $5,001 - $10,000 | add **4** |
| (F) | $10,001 - $20,000 | add **5** |
| (G) | $20,001 - $50,000 | add **6** |
| (H) | $50,001 - $100,000 | add **7** |
| (I) | $100,001 - $200,000 | add **8** |
| (J) | $200,001 - $500,000 | add **9** |
| (K) | $500,001 - $1,000,000 | add **10** |
| (L) | $1,000,001 - $2,000,000 | add **11** |
| (M) | $2,000,001 - $5,000,000 | add **12** |
| (N) | over $5,000,000 | add **13** |

(2)   If a firearm, destructive device, or controlled substance was taken, increase by **1** level; but if the resulting offense level is less than **7**, increase to level **7**.

(3)   If the theft was from the person of another, increase by **2** levels.

(4)   If the offense involved more than minimal planning, increase by **2** levels.

(5)   If undelivered United States mail was taken, and the offense level as determined above is less than level **6**, increase to level **6**.

2.15                                          October, 1987

This calculation is based on the following

Base Offense Level = 4

Specific Offense Level = 10

3B1.3 Enhancement = 2

Total Offense Level = 16

24

## SENTENCING TABLE

### Criminal History Category

| Offense Level | I<br>0 or 1 | II<br>2 or 3 | III<br>4, 5, 6 | IV<br>7, 8, 9 | V<br>10, 11, 12 | VI<br>13 or more |
|---|---|---|---|---|---|---|
| 1 | 0 - 1 | 0 - 2 | 0 - 3 | 0 - 4 | 0 - 5 | 0 - 6 |
| 2 | 0 - 2 | 0 - 3 | 0 - 4 | 0 - 5 | 0 - 6 | 1 - 7 |
| 3 | 0 - 3 | 0 - 4 | 0 - 5 | 0 - 6 | 2 - 8 | 3 - 9 |
| 4 | 0 - 4 | 0 - 5 | 0 - 6 | 2 - 8 | 4 - 10 | 6 - 12 |
| 5 | 0 - 5 | 0 - 6 | 1 - 7 | 4 - 10 | 6 - 12 | 9 - 15 |
| 6 | 0 - 6 | 1 - 7 | 2 - 8 | 6 - 12 | 9 - 15 | 12 - 18 |
| 7 | 1 - 7 | 2 - 8 | 4 - 10 | 8 - 14 | 12 - 18 | 15 - 21 |
| 8 | 2 - 8 | 4 - 10 | 6 - 12 | 10 - 16 | 15 - 21 | 18 - 24 |
| 9 | 4 - 10 | 6 - 12 | 8 - 14 | 12 - 18 | 18 - 24 | 21 - 27 |
| 10 | 6 - 12 | 8 - 14 | 10 - 16 | 15 - 21 | 21 - 27 | 24 - 30 |
| 11 | 8 - 14 | 10 - 16 | 12 - 18 | 18 - 24 | 24 - 30 | 27 - 33 |
| 12 | 10 - 16 | 12 - 18 | 15 - 21 | 21 - 27 | 27 - 33 | 30 - 37 |
| 13 | 12 - 18 | 15 - 21 | 18 - 24 | 24 - 30 | 30 - 37 | 33 - 41 |
| 14 | 15 - 21 | 18 - 24 | 21 - 27 | 27 - 33 | 33 - 41 | 37 - 46 |
| 15 | 18 - 24 | 21 - 27 | 24 - 30 | 30 - 37 | 37 - 46 | 41 - 51 |
| 16 | 21 - 27 | 24 - 30 | 27 - 33 | 33 - 41 | 41 - 51 | 46 - 57 |
| 17 | 24 - 30 | 27 - 33 | 30 - 37 | 37 - 46 | 46 - 57 | 51 - 63 |
| 18 | 27 - 33 | 30 - 37 | 33 - 41 | 41 - 51 | 51 - 63 | 57 - 71 |

## V.    The Pertinent Policy Statement Favors a Non-Custodial Sentence.

Congress requires the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence **other than imprisonment in cases in which the defendant is a first offender**...." 28 U.S.C. § 994(j)(emphasis added).  In light of Mr. Lutamila's first offender status, a prison sentence would not be appropriate here.  The Sentencing Commission has noted that offenders who fall into Criminal History Category I are less likely to receive a straight prison sentence. [52]

---

[52] *See* U.S. Sentencing Comm'n, *Recidivism and the "First Offender,"* (May 2004) p. 10, available at https://www.ussc.gov/sites/default/files/pdf/research-and-

## VI.    Similarly Situated Defendants Have Received Below Guideline Sentences.

When sentencing a defendant, the Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[53]

In cases where an employee stole from or caused financial destruction to an employer, the Courts did not anchor themselves to the loss table.  In *United States v. Brian Johnson*, No. 3:15-cr-92 (M.D. La), the defendant was terminated from Georgia-Pacific, one the world's largest paper companies, with a sophisticated computer system.  The defendant was an IT specialist and systems administrator.  Approximately, two weeks after he was fired, he remotely accessed the company's computer system and transmitted a code and commands that damaged the computer system.  The damage caused more than $1.1 million in damages to the company.[54]  He was sentenced to 34 months.

In *United States v. Sophia Kim*, No. 21-cr-219-RC, the amount of loss was $1.5 million and the defendant received 42 months of imprisonment.  In that case, Kim was the Treasurer and Comptroller of a foundation.  She conducted 197 unauthorized debits and cash withdrawals and 139 unauthorized credit card

_____

publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last accessed on April 29, 2021).

[53] 18 U.S.C. §3553(a)(6).

[54] AP News article - https://apnews.com/article/1cc3696d641845f6862f33fcbf63d70b; see also https://www.justice.gov/usao-mdla/pr/former-systems-administrator-sentenced-prison-hacking-industrial-facility-computer

26

transactions.[55]

In a case where the defendant spent converted funds on a lavish lifestyle and lost at trial, this Honorable Court sentenced the defendant below the tax loss table. In *United States v. Michael Sang Han*, No. 15-cr-142-JEB, this Court sentenced the defendant to 48 months of imprisonment after trial, where the restitution amount was $4.9 million.  According to the government in that case, Han

> converted $14,456,855 in corporate investments made to Envion Inc., a privately-owned technology company for which Defendant was the sole owner, to his own personal income. Defendant used the converted income to live a luxury lifestyle including, but not limited to, the purchase of a $3 million house in West Palm Beach, Florida, $2 million in renovations to the home, and approximately $440,000 on luxury automobiles.[56]

Han owed $4.9 million in taxes and filed false tax returns.

Lastly, the Court cannot ignore the impact of race on sentencing.  Notably, from 2015 to 2021, Black people sentenced under 2B1.1 have an average sentence of 18 months compared to White people who receive a sentence of 15 months.

---

[55] ECF No. 50, Statement of Offense.
[56] ECF No. 165, Gov't Sentencing Mem.



The figure includes the 171 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of 470 months or greater (including life) and probation were included in the sentence average computations as 470 months and zero months, respectively. Sentences of probation only are included here as zero months. The information in this figure includes conditions of confinement as described in USSG §5C1.1. FILTER:

28

83



Like in *Gall*, "[a]ny term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who . . . understands the consequences of his criminal conduct and is doing everything in his power to forge a new life."  552 U.S. at 44 (citation omitted) (quoting district court).  As a result, Mr. Lutamila requests a sentence of 12 months and 1 day.  The requested sentence is not "greater than necessary," and is sufficient for the purposes of sentencing.

## **Conclusion**

For the foregoing reasons, and for any other reasons set forth at the

sentencing hearing, a sentence 12 months and 1 day sufficiently addresses Mr.

Lutamila's conduct as well as other factors pursuant to 18 U.S.C. § 3553(a).

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Ubong E. Akpan
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

---

[i] The Borgen Project, 5 Facts About the Causes of Poverty in Tanzania, Ja. 15, 2021, available at https://borgenproject.org/causes-of-poverty-in-tanzania/ (last accessed on Sept. 14, 2022).

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED SATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal No. 20-CR-24 (JEB) |
| v. | ) | |
| | ) | |
| SALUSTHIAN LUTAMILA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

The United States of America, by its attorney, the United States Attorney for the District of Columbia, hereby submits this supplemental memorandum in aid of sentencing for defendant Salusthian Lutamila.

As noted in the Government's sentencing memorandum, the government also seeks a forfeiture order. *See* Gov't Pretrial Memorandum Regarding Procedures for Forfeiture Allegation, ECF No.57.   Attached as Exhibit A is a proposed Forfeiture Order.

Respectfully submitted,

/s/ *Melissa Jackson*
Melissa Jackson (D.C. Bar No. 996787)
Assistant U.S. Attorney
Fraud Section
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, DC 20530
(202) 252-7786
Melissa.Jackson@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| UNITED SATES OF AMERICA, | ) | |
| | ) | Criminal No. 20-CR-24 (JEB) |
| v. | ) | |
| | ) | |
| SALUSTHIAN LUTAMILA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[Proposed] ORDER OF FORFEITURE**

**WHEREAS**, the Indictment alleged the forfeiture of property, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

**WHEREAS**, the Indictment further alleged that the United States will seek a forfeiture money judgment against the defendant and in favor of the United States;

**WHEREAS**, on May 11, 2022, a jury found the defendant guilty of Count One, Bank Fraud, in violation of Title 18, United States Code, Section 1344(1), Counts Two through Eight, Theft by a Credit Union Employee, in violation of Title 18, United States Code, Section 657, Counts Nine through Fifteen, Wire Fraud, in violation of Title 18, United States Code, Section 1343, and Count Sixteen through Twenty-One, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Sections 1957;

**WHEREAS**, pursuant to Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it, that: any property

1

constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of the violation alleged in Count One, to which the defendant was found guilty, any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts Two through Fifteen, to which the defendant was found guilty, and any property, real or personal, involved in the offenses alleged in Counts Sixteen through Twenty-One, to which the defendant was found guilty or any property traceable to such property is subject to forfeiture.

**WHEREAS**, pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it that entry of a forfeiture money judgment against the defendant and in favor of the United States in the amount of $76,069 is appropriate, insofar as this property is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

**WHEREAS**, Title 21, United States Code, Section 853(p) authorizes the forfeiture of substitute property;

**WHEREAS**, upon entry of a forfeiture order, Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure authorizes the Attorney General or a designee to conduct any discovery the Court considers proper in identifying, locating, or disposing of property subject to forfeiture;

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1. A forfeiture money judgment in the amount of $76,069 is entered against the defendant and in favor of the United States.

2. The Court finds that the proceeds that the defendant personally obtained as a result of the offenses that he has been found guilty of have been dissipated by him and cannot be located

upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third

party; and/or have been placed beyond the jurisdiction of the Court.

4.     The Court shall retain jurisdiction to enforce this Order, and to amend it as

necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

5.     That pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this

Order of Forfeiture shall become final as to the defendant at the time of sentencing, and shall be

made part of the sentence and included in the judgment.]

6.     The Attorney General or a designee, pursuant to Rule 32.2(b)(3) of the Federal

Rules of Criminal Procedure, is authorized to conduct any discovery to identify, locate, or dispose

of property subject to this Order.

7.     The Clerk of the Court shall forward a certified copy of this Order to

USADC.AFMLS2@usdoj.gov.

Dated this _____ day of _____, 2022.


                                        _____
                                        JAMES E. BOASBERH
                                        UNITED STATES DISTRICT JUDGE

3

89

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED SATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 20-CR-24 (JEB) |
| | ) | |
| SALUSTHIAN LUTAMILA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### [Proposed] ORDER OF FORFEITURE

**WHEREAS**, the Indictment alleged the forfeiture of property, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

**WHEREAS**, the Indictment further alleged that the United States will seek a forfeiture money judgment against the defendant and in favor of the United States;

**WHEREAS**, on May 11, 2022, a jury found the defendant guilty of Count One, Bank Fraud, in violation of Title 18, United States Code, Section 1344(1), Counts Two through Eight, Theft by a Credit Union Employee, in violation of Title 18, United States Code, Section 657, Counts Nine through Fifteen, Wire Fraud, in violation of Title 18, United States Code, Section 1343, and Count Sixteen through Twenty-One, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Sections 1957;

**WHEREAS**, pursuant to Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it, that: any property

1

constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of the violation alleged in Count One, to which the defendant was found guilty, any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts Two through Fifteen, to which the defendant was found guilty, and any property, real or personal, involved in the offenses alleged in Counts Sixteen through Twenty-One, to which the defendant was found guilty or any property traceable to such property is subject to forfeiture.

*WHEREAS*, pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it that entry of a forfeiture money judgment against the defendant and in favor of the United States in the amount of $76,069 is appropriate, insofar as this property is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

*WHEREAS*, Title 21, United States Code, Section 853(p) authorizes the forfeiture of substitute property;

*WHEREAS*, upon entry of a forfeiture order, Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure authorizes the Attorney General or a designee to conduct any discovery the Court considers proper in identifying, locating, or disposing of property subject to forfeiture;

*NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED*:

1.     A forfeiture money judgment in the amount of $76,069 is entered against the defendant and in favor of the United States.

2.     The Court finds that the proceeds that the defendant personally obtained as a result of the offenses that he has been found guilty of have been dissipated by him and cannot be located

2

upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third

party; and/or have been placed beyond the jurisdiction of the Court.

4.     The Court shall retain jurisdiction to enforce this Order, and to amend it as

necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

5.     That pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this

Order of Forfeiture shall become final as to the defendant at the time of sentencing, and shall be

made part of the sentence and included in the judgment.]

6.     The Attorney General or a designee, pursuant to Rule 32.2(b)(3) of the Federal

Rules of Criminal Procedure, is authorized to conduct any discovery to identify, locate, or dispose

of property subject to this Order.

7.     The Clerk of the Court shall forward a certified copy of this Order to

USADC.AFMLS2@usdoj.gov.

Dated this _____ day of _____ , 2022.

JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Case No. 20-cr-024 (JEB) |
| SALUSTHIAN LUTAMILA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### SUPPLEMENT TO SENTENCING MEMORANDUM

Salusthian Lutamila, through undersigned counsel, respectfully provides this Exhibit to supplement the Sentencing Memorandum.  Undersigned counsel cited for the Probation Office that Ms. Hunt directed Mr. Lutamila to reactive the dormant account and planned to cite that in the Sentencing Memorandum.  Exhibit 1 is the basis for that fact in addition to her testimony at trial.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

UBONG E. AKPAN
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

# EXHIBIT 1

## Young, Norma

| | |
|---|---|
| **From:** | Argueta Castro, Andrea |
| **Sent:** | Monday, April 22, 2019 2:47 PM |
| **To:** | Hunt, Florencia |
| **Subject:** | Re: Information Requested with correction |

Florencia,

Thanks for your email. He was not the acting CEO, but the acting CFO.

Regards,

Andrea

Get Outlook for iOS

---

**From:** Hunt, Florencia <florenciah@iadb.org>
**Sent:** Monday, April 22, 2019 2:29 PM
**To:** Argueta Castro, Andrea
**Subject:** FW: Information Requested with correction
Andrea,
I will like to make a correction were the COO was mention by error on my part.
The acting CEO Sallu Lutamila was the person I told that the Acceso account needed addressing in order to save it from been escheated.
**Florencia L. Hunt**
**Branch Manager**
**IDB-IIC Federal Credit Union**
(202) 623-3354 | www.idbcreditu.org
**1300 New York Avenue NW | Washington, DC 20577**
*This communication may contain privileged and/or other confidential information.*
*If you have received this communication in error, please advise the sender by reply*
*email and immediately delete the message and any attachments without copying or*
*disclosing the contents. Thank you.*

 *Please consider the environment - only print this correspondence if absolutely necessary.*

**From:** Hunt, Florencia
**Sent:** Monday, April 22, 2019 10:46 AM
**To:** Argueta Castro, Andrea <andreaac@IADB.ORG>
**Subject:** Information Requested
Dear Andrea,
Please see requested information below.
I, Florencia L. Hunt branch manager of the IDB IIC FCU was asked to recall recent events that involve the Acceso Account and why I Florencia L. Hunt Branch Manager excepted the Accesso account from been ESCHEATED to the District of Columbia Government.
I know for a fact that this account belongs to the IDB IIC FCU. As stated to my current CEO Mr. Chip Lusk, this account was created in a collaboration with two other entities to reach out to other communities besides the IADB families.
The activation of the account was done by transferring $1.00 form an IDB C.U. account to the Acceso which then was transferred back on the same day, the reason for my action is because this exception has occurred several times in the past by the direction of IDB Leadership.

1

IDBIIC-FCU-000000007

IDBIIC-FCU-00000006

The dormant Acceso account was brought to the attention of the COO, indicating that the account needed to be addressed in order to save the account.

If there any additional questions for me please feel free to ask me.

**Florencia L. Hunt**
**Branch Manager**
IDB-IIC Federal Credit Union
(202) 623-3354 | www.idbcreditu.org
1300 New York Avenue NW | Washington, DC 20577

*This communication may contain privileged and/or other confidential information.*
*If you have received this communication in error, please advise the sender by reply*
*email and immediately delete the message and any attachments without copying or*
*disclosing the contents. Thank you.*

 *Please consider the environment - only print this correspondence if absolutely necessary.*

2

If you would like the history on this account I have information on it because I was part of the focus group when they were exploring the creation of the "Acceso Group". I helped to train the tellers and supervisors when the Acceso was open. I have brought this account to Sallu's attention informing him that immediate action is to be given to the account because I have exempted the funds from being escheated on several occasion (not only I but the previous manager also). My understanding is that the funds belong to the Credit Union. I can tell you that Bruce Cameron handled all paper work for Acceso Credit Union I may be wrong, perhaps Chip may know more about the account or may have a file on this account.

I was told that you asked others and gave them the account information to search before stopping in my office. It would have saved us both time and effort if I was given the name and account number from the beginning. Sharing critical information and thorough communication is vital to our work. I want to remind you that we are on the same team and I am never too busy to support or help the compliance department.

Florencia L. Hunt
Branch Manager
IDB-IIC Federal Credit Union
(202) 623-3354 | www.idbcreditu.org
1300 New York Avenue NW | Washington, DC 20577

*This communication may contain privileged and/or other confidential information. If you have received this communication in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.*

*Please consider the environment - only print this correspondence if absolutely necessary.*

From: Young, Norma <NormaY@IADB.ORG>
Sent: Monday, April 15, 2019 3:29 PM
To: Hunt, Florencia <FLORENCIAH@iadb.org>
Cc: Lopez, Katherine <KatherineL@IADB.ORG>
Subject: Signature card

Good afternoon, Florencia

Thank you for your assistance this afternoon trying to locate the Acceso (**80300) signature card opened 01/27/2012. However, the signature card/any updates could not be located. Unfortunately, we need to retrieve the original or a copy of the paperwork from Iron Mountain. Also, can we place a priority on this request?

Please let me know if I can clarify or assist in any way.

Always appreciate you and your team!


Norma A. Young, CFE, NCBSO, CISSP
Compliance and Risk Management Specialist
IDB-IIC Federal Credit Union
1300 New York Avenue NW
Washington, DC 20577
(202) 623-1811 (o)
(202) 312-4055(f)

2

IDBIIC-FCU-000000009

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| SALUSTHIAN LUTAMILA | Case Number: 20-cr-00024-JEB-1 |
| | USM Number: 35600-016 |
| | Ubong E. Akpan |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☑ was found guilty on count(s)   one through twenty-one (1-21) .
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 1344(l) | Bank Fraud | 01/2019 | 1 |
| 18 USC § 657 | Theft by Credit Union Employee | 11/16/2018 | 2 |
| 18 USC § 657 | Theft by Credit Union Employee | 11/30/2018 | 3 |

     The defendant is sentenced as provided in pages 2 through ____11____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/16/2022
Date of Imposition of Judgment

Signature of Judge

James E. Boasberg, U.S. District Court Judge
Name and Title of Judge

9/19/22
Date

98

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1A

Judgment—Page ___2___ of ___11___

DEFENDANT:  SALUSTHIAN LUTAMILA
CASE NUMBER:  20-cr-00024-JEB-1

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 657 | Theft by Credit Union Employee | 12/6/2018 | 4 |
| 18 USC § 657 | Theft by Credit Union Employee | 12/28/2018 | 5 |
| 18 USC § 657 | Theft by Credit Union Employee | 1/14/2019 | 6 |
| 18 USC § 657 | Theft by Credit Union Employee | 1/16/2019 | 7 |
| 18 USC § 657 | Theft by Credit Union Employee | 1/22/2019 | 8 |
| 18 USC § 1343 | Wire Fraud | 11/16/2018 | 9 |
| 18 USC § 1343 | Wire Fraud | 11/30/2018 | 10 |
| 18 USC § 1343 | Wire Fraud | 12/6/2018 | 11 |
| 18 USC § 1343 | Wire Fraud | 12/28/2018 | 12 |
| 18 USC § 1343 | Wire Fraud | 1/14/2019 | 13 |
| 18 USC § 1343 | Wire Fraud | 1/16/2019 | 14 |
| 18 USC § 1343 | Wire Fraud | 1/22/2019 | 15 |
| 18 USC § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 11/30/2018 | 16 |
| 18 USC § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 1/22/2019 | 17 |
| 18 USC § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 2/8/2019 | 18 |
| 18 USC § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 2/27/2019 | 19 |
| 18 USC § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 3/14/2019 | 20 |
| 18 USC § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 2/27/2019 | 21 |

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

| Judgment — Page | 3 | of | 11 |

DEFENDANT:  SALUSTHIAN LUTAMILA
CASE NUMBER:  20-cr-00024-JEB-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
forty-four (44) months on counts 1-21 to run concurrently.

☑ The court makes the following recommendations to the Bureau of Prisons:
Low Security BOP

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.  on _____

☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____

☐ as notified by the United States Marshal.

☑ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 2A — Imprisonment

Judgment—Page ___4___ of ___11___

DEFENDANT:  SALUSTHIAN LUTAMILA
CASE NUMBER:  20-cr-00024-JEB-1

## ADDITIONAL IMPRISONMENT TERMS

Defendant may Self Surrender when directed by BOP and the Probation Office.

101

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
　　　　　　　　　　Sheet 3 — Supervised Release

| | | | Judgment—Page | 5 | of | 11 |

DEFENDANT:  SALUSTHIAN LUTAMILA
CASE NUMBER:  20-cr-00024-JEB-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

thirty-six (36) months on counts 1-21 to run concurrently.

## MANDATORY CONDITIONS

1.　You must not commit another federal, state or local crime.
2.　You must not unlawfully possess a controlled substance.
3.　You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
　　　☑ The above drug testing condition is suspended, based on the court's determination that you
　　　　pose a low risk of future substance abuse. *(check if applicable)*
4.　☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.　☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.　☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.　☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___6___ of ___11___

DEFENDANT: SALUSTHIAN LUTAMILA
CASE NUMBER: 20-cr-00024-JEB-1

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

103

DEFENDANT: SALUSTHIAN LUTAMILA
CASE NUMBER: 20-cr-00024-JEB-1

## SPECIAL CONDITIONS OF SUPERVISION

While on supervision, you shall abide by the following mandatory conditions, as well as the standard conditions of supervision, which are imposed to establish the basic expectations for your conduct while on supervision. The mandatory conditions include:

1. You must not commit another federal, state, or local crime.
2. You must not unlawfully possess a controlled substance.
3. The mandatory drug testing condition is suspended based on the court's determination that you pose a low risk of future substance abuse.
4. You must cooperate in the collection of DNA as directed by the probation officer.
5. You must make restitution in accordance with 18 USC §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.

You shall comply with the following special conditions:

Employment Restriction Requiring Approval - You must not work in any type of employment in which you have access to financial records or accounts without the prior approval of the probation officer.

Financial Disclosure - You shall provide the Probation Office with your income tax returns, authorization for release of credit information, and information about any business or finances in which you have a control or interest until all restitution is satisfied.

Financial Restrictions - You are prohibited from incurring new credit charges, opening additional lines of credit, or negotiating or consummating any financial contracts without the approval of the Probation Office.

You are ordered to make restitution to Travelers Casualty and Surety Company of America in the total amount of $76,069.63. The court determined you do not have the ability to pay interest and therefore waives any interest or penalties that may accrue on the balance.
Restitution payments shall be made to the Clerk of the Court for the United States District Court, District of Columbia, for disbursement to the following victim:

Travelers Casualty and Surety
Company of America
ATTN: Travelers Bond &
Specialty Insurance Claim
385 Washington St.
Mail Code 9275-NB03F
St Paul, MN 55102
$76,069.63
Restitution Obligation - Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows: Payment during the term of supervised release will commence within 60 days after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time.

Re-entry Progress Hearing - Within sixty days of release from incarceration or placement on supervision, you will appear before the Court for a re-entry progress hearing. Prior to the hearing, the probation officer will submit a report summarizing your status and compliance with release conditions. If you are supervised by a district outside of the Washington DC metropolitan area, the United States Probation Office in that district will submit a progress report to the court within 60 days of the commencement of supervision; upon receipt of the progress report, the Court will determine if your appearance is required.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

|  |  | Judgment — Page | 8 | of | 11 |

DEFENDANT: SALUSTHIAN LUTAMILA
CASE NUMBER: 20-cr-00024-JEB-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 2,100.00 | $ 76,069.63 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Travelers Casualty and Surety Company of America ATTN: Travelers Bond & Specialty Insurance Claim 385 Washington St Mail Code 9275-NB03F St Paul, MN 55102 | | $76,069.63 | |
| **TOTALS** | $ 0.00 | $ 76,069.63 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☑ the interest requirement is waived for the   ☐ fine   ☑ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:  SALUSTHIAN LUTAMILA
CASE NUMBER:  20-cr-00024-JEB-1

Judgment — Page __9__ of __11__

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __2,100.00__     due immediately, balance due

       ☐ not later than _____ , or
       ☑ in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☑ F below; or

**B** ☐ Payment to begin immediately (may be combined with   ☐ C,    ☐ D, or    ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
      term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
      The financial obligations are immediately payable to the Clerk of the Court for the U.S. District Court, 333
      Constitution Ave NW, Washington, DC 20001. Within 30 days of any change of address, you shall notify the Clerk
      of the Court of the change until such time as the financial obligation is paid in full.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
    **see attached**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Case 1:20-cr-00024-JEB   Document 109   Filed 09/19/22   Page 10 of 11

DEFENDANT:  SALUSTHIAN LUTAMILA
CASE NUMBER:  20-cr-00024-JEB-1

## ADDITIONAL FORFEITED PROPERTY

see attached

DEFENDANT: SALUSTHIAN LUTAMILA
CASE NUMBER: 20-cr-00024-JEB-1

Judgment — Page __11__ of __11__

# DENIAL OF FEDERAL BENEFITS
### *(For Offenses Committed On or After November 18, 1988)*

## FOR DRUG TRAFFICKERS PURSUANT TO 21 U.S.C. § 862(a)

IT IS ORDERED that the defendant shall be:

☐   ineligible for all federal benefits for a period of _____ .

☐   ineligible for the following federal benefits for a period of _____ .

*(specify benefit(s))*

## OR

☐   Having determined that this is the defendant's third or subsequent conviction for distribution of controlled substances, IT IS ORDERED that the defendant shall be permanently ineligible for all federal benefits.

## FOR DRUG POSSESSORS PURSUANT TO 21 U.S.C. § 862(b)

IT IS ORDERED that the defendant shall:

☐   be ineligible for all federal benefits for a period of _____ .

☐   be ineligible for the following federal benefits for a period of _____ .

*(specify benefit(s))*

☐   successfully complete a drug testing and treatment program.

☐   perform community service, as specified in the probation and supervised release portion of this judgment.

☐   Having determined that this is the defendant's second or subsequent conviction for possession of a controlled substance, IT IS FURTHER ORDERED that the defendant shall complete any drug treatment program and community service specified in this judgment as a requirement for the reinstatement of eligibility for federal benefits.

Pursuant to 21 U.S.C. § 862(d), this denial of federal benefits does not include any retirement, welfare, Social Security, health, disability, Veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.   The clerk of court is responsible for sending a copy of this page and the first page of this judgment to:

**U.S. Department of Justice, Office of Justice Programs, Washington, DC 20531**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED SATES OF AMERICA, | ) ) ) | Criminal No. 20-CR-24 (JEB) |
| v. | ) ) | |
| SALUSTHIAN LUTAMILA, | ) ) ) | |
| Defendant. | ) ) | |

[Proposed] <u>ORDER OF FORFEITURE</u>

**WHEREAS**, the Indictment alleged the forfeiture of property, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

**WHEREAS**, the Indictment further alleged that the United States will seek a forfeiture money judgment against the defendant and in favor of the United States;

**WHEREAS**, on May 11, 2022, a jury found the defendant guilty of Count One, Bank Fraud, in violation of Title 18, United States Code, Section 1344(1), Counts Two through Eight, Theft by a Credit Union Employee, in violation of Title 18, United States Code, Section 657, Counts Nine through Fifteen, Wire Fraud, in violation of Title 18, United States Code, Section 1343, and Count Sixteen through Twenty-One, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Sections 1957;

**WHEREAS**, pursuant to Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it, that: any property

1

constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of the violation alleged in Count One, to which the defendant was found guilty, any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts Two through Fifteen, to which the defendant was found guilty, and any property, real or personal, involved in the offenses alleged in Counts Sixteen through Twenty-One, to which the defendant was found guilty or any property traceable to such property is subject to forfeiture.

*WHEREAS*, pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it that entry of a forfeiture money judgment against the defendant and in favor of the United States in the amount of $76,069 is appropriate, insofar as this property is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

*WHEREAS*, Title 21, United States Code, Section 853(p) authorizes the forfeiture of substitute property;

*WHEREAS*, upon entry of a forfeiture order, Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure authorizes the Attorney General or a designee to conduct any discovery the Court considers proper in identifying, locating, or disposing of property subject to forfeiture;

*NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED*:

1.  A forfeiture money judgment in the amount of $76,069 is entered against the defendant and in favor of the United States.

2.  The Court finds that the proceeds that the defendant personally obtained as a result of the offenses that he has been found guilty of have been dissipated by him and cannot be located

2

upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

4.  The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

5.  That pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order of Forfeiture shall become final as to the defendant at the time of sentencing, and shall be made part of the sentence and included in the judgment.]

6.  The Attorney General or a designee, pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, is authorized to conduct any discovery to identify, locate, or dispose of property subject to this Order.

7.  The Clerk of the Court shall forward a certified copy of this Order to USADC.AFMLS2@usdoj.gov.

Dated this _____16t_____ day of _____Sept.____, 2022.

_____
JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE

3

111

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| vs. | : | **Case No.: 20-cr-00024-JEB** |
| SALUSTHIAN LUTAMILA | : | |
| Defendant. | : | |

# NOTICE OF APPEAL

**Name and address of appellant:**       Salusthian Lutamila

**Name and address of appellant's attorney:**       Ubong Akpan,
Assistant Federal Public Defender
Office of the Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, DC 20004

**Offense:** 18:1344(1) Bank Fraud; 18:657 Theft by Credit Union Employee;18:1957 Engaging In Monetary Transactions; Engaging In Monetary Transactions In Property Derived From Specified Unlawful Activity.

**Concise statement of judgment or order, giving date, and any sentence:** Defendant sentenced to forty-four (44) months incarceration, thirty-six (36) months Supervised Released on counts 1-21 to run concurrently, Restitution in the amount of 76,069.63, and a Special Assessment of $100 on each count (1-21) totaling $2100.

**Name of institution where now confined, if not on bail:** Personal Recognizance Bond

       I, the above-named appellant, hereby appeal to the United States Court of Appeals for the District of Columbia from the above-stated judgment.

September 22, 2022
DATE

CJA, NO FEE _____FPD_____
PAID USDC FEE ___NO_____
PAID USCA FEE ___NO_____

Salusthian Lutamila
APPELLANT

A. J. Kramer_____
FEDERAL PUBLIC DEFENDER
ATTORNEY FOR APPELLANT

Does counsel wish to appear on appeal? Yes
Has counsel ordered transcripts? No
Is this appeal pursuant to the 1984 Sentencing Reform Act? Yes

112

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---------------------------X

UNITED STATES OF AMERICA

                v.               Criminal Case 20-0024 (JEB)

SALUSTHIAN LUTAMILA,

        Defendant

---------------------------X

                            Washington, D.C
                   September 16, 2022
                       11:15 a.m.

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: Peter C. Lallas, AUSA
                    Melissa Joy Jackson, AUSA
                    U.S. ATTORNEY'S OFFICE FOR D.C.
                    601 D Street, NW.
                    Washington, DC 20530
                    (202) 252-7566

For the Defendant: Ubong Akpan, AFPD
                    FEDERAL PUBLIC DEFENDER FOR D.C.
                    625 Indiana Avenue, NW, Suite 550
                    Washington, DC 20004
                    (202) 208-7500

                    Sarah Catalano, Esq.
                    Caroline Malone, Esq
                    EIMER STAHL
                    224 South Michigan Avenue, Suite 1100
                    Chicago, IL 60604
                    (312) 660-7600

Court Reporter:    Lisa Walker Griffith
                      lgriffith54@outlook.com

 1                    P–R–O–C–E–E–D–I–N–G–S

 2           THE COURTROOM DEPUTY:  Good morning, everyone.

 3    We're here today for a sentencing in criminal case 20-24.

 4    *The United States of America versus Salusthian Lutamila.*

 5           Beginning with counsel for the government, please

 6    approach the lecturn and identify yourselves for the record.

 7           MS. JACKSON:  Good morning, Your Honor.  Melissa

 8    Jackson on behalf of the United States.

 9           THE COURT:  Good morning.

10           MS. AKPAN:  Good morning, Your Honor.  Ubong Akpan

11    on behalf of Mr. Lutamila.  I'm joined at defense counsel by

12    our intern Jake Bundy, who assisted me on the sentencing

13    memo.

14           THE COURT:  Okay.  Good morning.  All right.

15           Mr. Lutamila, good morning.

16           We're here today for sentencing.  I have reviewed

17    all of the materials submitted by both sides.  This was the

18    result of a trial which I presided over, so I'm intimately

19    familiar with all of the facts and don't need a recitation

20    of them again.  So we'll now move to allocution.

21           Ms. Jackson, I'll let you start.

22           MS. JACKSON:  Yes, Your Honor.  Before I begin,

23    there are some representatives from the Credit Union that

24    would like to speak to the Court --

25           THE COURT:  Okay.

1       MS. JACKSON:  -- on behalf of the Credit Union.

2       THE COURT:  Okay.  Good morning, sir.  Just if

3  you'll state your name for the record, please.

4       THE WITNESS:  Your Honor, my name is Chip Lusk,

5  and I'm the CEO of IDB Global Federal Credit Union.

6       THE COURT:  Okay.  Thank you.

7       THE WITNESS:  I joined the company in 2016, and I

8  knew Sallu during his entire tenure with the Credit Union.

9  While our victim impact statement or this victim impact

10  statement is being presented under seal, I will read

11  portions of the statement to adequately convey the emotional

12  toll these crimes placed on our company and our employees.

13       I would also like to acknowledge that I'm

14  accompanied today by several employees who also experienced

15  the same extreme duress caused by Mr. Lutamila's fraudulent

16  criminal activity.

17       Our financial losses for which we request

18  restitution are detailed in the sealed statement.  Beyond

19  the financial losses and loss of productivity, we believe

20  it's impossible to calculate the hours worrying, including

21  the sleepless nights, about this matter.

22       The initial and ongoing trauma experienced by the

23  staff was extremely painful.  Mr. Lutamila had been a highly

24  trusted member of our senior leadership team and the entire

25  staff.  His education included multiple degrees and

certifications, such as MBA, Certified Public Accountant and
Certified Fraud Examiner.

He portrayed himself to be a beacon of moral and
ethical behavior. He was one of the only persons on staff
who deliberately paused to pray silently before eating
lunch. He was polite, humble and quiet. In short, we
trusted him, which made the news of his crimes, stealing
money seven times on multiple months -- over multiple
months, more shocking and harder to believe.

His crimes destroyed the trust and the morale of
employees, especially those who reported to him. One
employee said, "We were devastated to learn that someone we
worked so closely with every day could steal from their
employer. We're a small organization of about 50 employees,
and everyone knew him and trusted him."

In the days, months and years that followed the
discovery of his crimes, the Credit Union staff spent
hundreds of hours investigating the crimes, consoling staff,
analyzing information, tightening controls, responding to
multiple subpoena requests, preparing for trial and
attending trial. Each of these activities was extremely
stressful and time consuming.

Staff and we felt victimized again and again with
each request and each activity. In addition to feeling
victimized by the crime, many staff members felt paranoid,

wondering who they can trust, wondering if they were duped

by Mr. Lutamila into unknowingly assisting him with his

crimes or concerned that they may be perceived as guilty by

association.

Some staff have lived in fear that Mr. Lutamila

may physically harm them after the stolen funds were

recovered from his account at ETrade.  Staff has had

concerns about seeing him near the Credit Union, near their

homes or on their daily work commutes.

Some comments from staff include, "If he steals

from us, what else will he do to us?"

"If he appears at home or work, call the police.

Do not engage with him."

"The stress he caused not only took a toll on my

life, but it also took a toll on my family."

The Credit Union and its staff continue to recover

from Mr. Lutamila's crimes.  We are dealing with the public

stigma of being a criminal victim.  We are restoring trust

with our member owners as well as our directors and each

other.

While we will continue to answer questions

regarding the crimes from time to time, we will always

explain that the behaviors of one dishonest individual do

not reflect those of our Credit Union family.

On a personal level, I believed in him.  I

invested time and resources in coaching and training him and
I trusted him.  He not only let me down, he took advantage
of my trust and he hurt me deeply.

On Page 15 of Mr. Lutamila's recent sentencing
memorandum he filed two days ago, he says that he "never
intended to defraud the Credit Union and never intended to
cheat the Credit Union."  Yet, we discovered that he had
crafted and was deliberately executing a scheme to transfer
funds out of the Credit Union to his personal account at
ETrade.

He did not do this crime once, rather he did this
crime seven times over a three-month period.  This was not a
lapse of judgment.  Rather, it was deliberate planned
premeditated crimes.  When we discovered the crimes and
confronted him about the abnormalities, he did not deny it
nor did he ask any questions.

When the Department of Justice brought charges
against him, he pled innocence, showed no remorse and forced
a trial which unnecessarily spent taxpayer dollars for the
prosecution to litigate.  He lied to me.  He lied to the
Credit Union, and he's lying to us by saying that he never
intended to defraud or cheat the Credit Union.

In conclusion of my comments, Mr. Lutamila
betrayed our confidence and trust.  He stole from our member
owners and showed no remorse.  He victimized us multiple

times, first, with the criminal discovery investigation,

then with the subpoenas, trial preparations and a multi-day

trial and, most recently, with his memorandum filed two days

ago.

   The Credit Union believes that his conviction

sentence should reflect his series of multiple crimes, the

resources expended by law enforcement and the Department of

Justice during prosecution and the countless hours and

ongoing distress experienced by the Credit Union staff.

Thank you.

   THE COURT:  Thank you very much.

   Good morning, sir.  If you could state your name

for me, please.

   THE WITNESS:  Good morning, Your Honor.  My name

is Mark Schwartz.

   THE COURT:  And your title, please?

   THE WITNESS:  Yes.  I'm the Director of Human

Resources and have been at IDB Global Federal Credit Union

since February of 2017.

   THE COURT:  Thank you.

   THE WITNESS:  Certainly.

   Mr. Lutamila was a key leader at the Credit Union

for the time that he was employed in his last position as

the director of accounting.  Once he learned that he would

not become the Chief Financial Officer for the Credit Union,

he was told on multiple times that we wanted him to remain

at the Credit Union.

He was still critical to the growth and the

success of the accounting department as well as the Credit

Union.  It was never the desire nor the intention that he

leave the Credit Union.

After Mr. Lutamila submitted his resignation and

many times, again, asking him to reconsider to stay with us,

it was finally accepted when we knew that he was no longer

going to rescind the resignation.  So as we were not

successful in changing his decision, we asked him to remain

for several months through April 30th, for three months,

actually.  That was to help ensure a smooth transition with

the new CFO that was joining the company.

He agreed to remain with us, with a written

agreement that we agreed to document the terms for which he

would remain.  I have to say that negotiating the terms and

the expectations with Mr. Lutamila was really the most

challenging employee discussion with anyone that I've had in

my career in human resources.

Mr. Lutamila had very unrealistic expectations,

demands on how we should compensate him for that three-month

period.  For me personally, it was very frustrating because

I just could not understand or fathom how I was not

communicating effectively with him the logic and rationale

and for him to understand how what was being presented and
was determined to be fair.

I did finally understand that, while Mr. Lutamila
had been stealing from the Credit Union between November
2018 and January 2019, it was his greed that was driving his
demands and expectations. Not knowing it at the time, the
Credit Union did provide an agreement that was signed by
both parties.

They were beyond what the Credit Union felt was
reasonable. But more importantly, it was critical that he
be a part of the Credit Union to help us through that
transition. So in order to have him remain, we agreed to
the terms and many of the things that he did request.

I understand now and realize, once that the theft
was discovered, that it was not, again, my own personal
inability to communicate effectively and clearly with him,
which was a personal relief to me.

I understood that I had been negotiating with a
thief who would have known that the Credit Union was in fact
acting in good faith but, instead, chose to take as much as
he possibly could from the Credit Union monetarily at every
possible end through the end of his employment.

Mr. Lutamila chose to steal from the Credit Union
and then, for more than three years, from April 2019 until
now, he has chosen not to admit what he did or make any

1    restitution.  He acted with disregard to the Credit Union,

2    to the staff, and to the members and has never admitted nor

3    shown remorse to the crimes committed.

4           I just ask that these factors be taken into

5    consideration in the final sentencing.

6           THE COURT:  Thank you very much.

7           Good morning.

8           THE WITNESS:  Good morning.  Marianne Quinn, I'm

9    the Chief Financial Officer at IDB Global Federal Credit

10   Union.  I started there in January of 2019.

11          In 2018, Sallu was informed that he would not be

12   selected to be the CFO at the Credit Union as he had hoped.

13   With his extensive accounting and audit experience and

14   strong credentials, upon hearing that he would not be

15   promoted, he could have chosen to leave the Credit Union.

16          It's very likely he could have easily found a new

17   job elsewhere.  It's a pretty straightforward career path

18   that many of have taken when they are unhappy at their place

19   of employment.

20          Instead, he made a series of choices to engage in

21   criminal behavior and stole from the Credit Union beginning

22   in November 2018 and until January of 2019.  Over and over

23   he made entries in our accounting system to accumulate money

24   that he could send to his ETrade account to buy stocks.  If,

25   instead of stealing, he had continued to work at our Credit

Union or found a new job elsewhere, he probably could have earned the same amount in a few years.

However, he chose to steal from the Credit Union, and then for more than three years, from April 2019 until now, he has chosen not to admit what was done or make any restitution. In April 2019, after I discovered this fraud, our CEO and I met with the team of people who had reported to Sallu. We told them that he was on leave pending investigation into accounting irregularities.

This was the most difficult meeting of my career. I knew that things could never be the same for that team. You can't be the same after learning someone you worked with every day and trusted was stealing money as they sat nearby.

But it also shook the group's trust with me. Why would I, this new person, say this which they didn't think to be true. But within a few weeks, Sallu was officially terminated. Each person was interviewed by the FBI.

And later, the team learned more details of what had been uncovered and could see the evidence that I had seen earlier. As a team, we were shattered. It took a long time to rebuild our trust in each other and to function as a team.

For me, the shock of discovering the fraud made me physically sick and caused many sleepless nights. And as difficult as that was, in some ways I felt luckier than my

colleagues.  I had only worked with him for three months.

While it was devastating to me, it was different and much

more personal for those who had looked up to him and trusted

him as their boss and leader for years.

For more than three years, his actions have caused

our Credit Union to spend an enormous amount of time on this

case.  We only have about 50 employees and had little

capacity to handle all the extra work that was required.  It

caused many people to work extensive overtime, causing us to

spend more time away from families, missing family events.

It was a huge distraction from our mission and our

purpose.  We spent time investigating to see if other funds

had been stolen.  We spent time collecting and reviewing

documents for subpoena requests, for the trial preparation,

the actual trial and now today.

It's difficult, stressful and does not advance our

mission of helping our Credit Union members.  Thank you.

THE COURT:  Thank you very much.

MS. JACKSON:  Thank you.  Melissa Jackson on

behalf of the United States.

Mr. Lutamila had everything going for him.  He had

a good job at the Credit Union he'd been working at for

years, a lot of professional experience, great degrees, an

MBA, a Certified Fraud Examiner credential.

Unlike so many of the defendants this Court sees,

his life had been a success story.  He had a good house, a

great job.  He was making good money so he could support the

people he loved back in Tanzania.

But in November of 2018, either because he felt

burned, he hadn't gotten a job he thought he was entitled to

or perhaps just because he could, he decided to steal from

the Credit Union that had been his professional home for two

years.

Week after week, he used his position of authority

and the skills he had learned over the past years and his

education, to move money around in the internal operating

accounts and then transfer it to an ETrade account he set

up.

He took that money, spent some of it, paid off a

car, upped his 401(k), but most of it he just invested and

sat on because, after all, this was not a crime of need.  He

didn't take the money because he needed it to spend on

something.  He didn't desperately need $610,000 all of a

sudden.

No, he stole over four times of his salary because

he could.  Because of the choices he made, we're asking the

Court to impose a guideline compliant sentence in this case.

First, I want to start with the good.  He has no

criminal convictions.  By all counts, he's led an upstanding

life up until November of 2018.  He established himself

coming from Tanzania and moving to this country, all of
which is admirable.  It does make you wonder why he would do
any of this, but wiser minds than me can figure that out.

He's been on pretrial release and not posed any
issues and been able to comply, which does stand in his
favor.  The other good is that, because of, honestly, the
hard work of Ms. Quinn and the other people who just came
here, this was uncovered in time for a large percentage of
the money directly stolen to be recovered.

Although, as indicated in the victim impact
statement by Mr. Lusk, that certainly doesn't cover the
entire cost to the institution or the Credit Union.  In the
government's view, these factors do weigh in his favor and
are the main reasons we are requesting at the bottom of the
guidelines in this case.

But despite these positive factors, the government
is seeking 51 months of jail time for five key reasons.  The
first is what he did, specifically, the duration and nature
of that crime.

Working in the criminal justice system, you see so
much impulsive, stupid, instantaneous and bad
decision-making.  That was not what occurred here.  It took
time.  It was not just one choice.  It was choice after
choice, week after week.

And it wasn't just even pressing a button seven

times to transfer that money because, in order to do that,

he had to set it up.  He had to set up an ETrade account

specifically for that core purpose.  Had to identify

accounts nobody would see as he moved the money around into

another account to then get it to the ETrade account.

Although we did not spend extra time on this fact

in trial, it wasn't just ending there because, after he took

the money from internal accounts and moved it to ETrade, he

had to backfill those accounts by moving more money creating

this extremely complicated knot and mess of finance that

Ms. Quinn and others had to then untangle to figure out what

was going on.

All that so that he wouldn't get caught.  It

required work.  He had to identify those accounts.  He had

to think through the process.  He had to take the steps in

each one.  And he had to make sure he was keeping all these

betrayals hidden with his accounting slight of hand.

Every single time he made one of those choices

over that two-plus-month period, he could have stopped.  He

could have made it right.  He could have just transferred

the money back.  Nobody would have noticed.

He even could have changed it at any point after

he decided to resign and stayed on at the company.  Still,

nobody had noticed.  He had multiple months to think about

his decision and undo it.  But that's not what he did.  What

he did was try to make himself richer by using that stolen money to just buy himself stock.

Reason two is who he was when he did this. He was the acting CFO. He supervised the finance team. He was the one making sure that the controls were in place. He was the one setting the example for the people he was in charge of teaching them how to do the right thing.

At the same time he was conducting these steps, he worked side by side with the people who just came up here. They had to walk by his office as they'd see him. He worked side by side with the people underneath him that he was defrauding without them knowing.

When you think of a bank, I know I certainly thought of a bank, I would think of a faceless human, an institution. The Credit Union in this case is not that. It's small, 50 employees or less, just one location, about 10,000 members. It's small.

And what that means is he looked the people in the face every day that he was betraying and worked with them side by side. He had the gall to look at them in the face and push for a retention bonus after completing the theft and after resigning, a retention bonus after he just stole four times his salary.

His betrayal was not just of a faceless entity. It was the people he supervised, the people he worked next

to and the people who had trusted him for years.

Reason three is his lack of remorse and his refusal to accept responsibility.  At no point has he shown an ounce of remorse.  There was overwhelming evidence in this case.

Not everybody has a right to their trial, but you have to wonder what he would think to gain given the evidence here.  It was a choice.  He not only stole and betrayed his peers but then he dragged them through a long and painful and extensive process to prove it in court.

He never accepted responsibility for what he did, and his choice not to accept responsibility means he should not be given the same benefit as those who do, as those who choose to plead guilty.

Reason four is the need to avoid unwanted sentencing disparities.  In the defense memorandum, they cited three particular cases as examples that should mean that he should get a lesser sentence, one that is not guideline compliant.

The first was *U.S. versus Johnson*, 15-CR-92, where the defense alleged that an IT employee did about a million dollars in damage and received a 34-month sentence. However, when I looked at the case, actually, per the plea paperwork, he had admitted to only committing $5,000 worth of damage not the full million.  And the sentencing

memorandums involved in that case were sealed, so I can't tell, but it does appear to be a guideline compliant sentence given that factor.

The second case cited was *United States versus Kim*, 21-CR-219, which involved a $1.5 million loss from a foundation where the defendant was a treasurer. She received 42 months of imprisonment. That was nine months lower than the bottom of the guideline sentence in that case.

However, one, that was also a plea where she accepted responsibility for what she did, something which is not present here. And two, there were mitigating circumstances which drove that decision by the Judge, specifically, that she suffered from, at the time, a very serious untreated gambling addiction and had been getting treatment for that issue for two years. Those are mitigating circumstances which simply do not exist in this case.

Finally, it was *U.S. versus Han*, which is Your Honor's case in 15-CR-142. There, the facts were somewhat closer. It was after trial, but the fraud charges were dismissed after the witness died. So it was just about the tax evasion, a sentence of 48 months, which was three months less than the bottom of the guidelines which had a range of at bottom of 51.

1    Per the transcript, Your Honor provided the basis

2  for that variation slightly downward because -- per the

3  transcript, Your Honor provided the basis for that variation

4  was because that the defendant at the time was -- had two

5  very sick and very elderly parents at home that he was

6  primarily responsible for.  Again, those are mitigating

7  circumstances that simply do not exist here.

8    Moreover, beyond the three examples cited, there

9  are many, many more cases not cited by the defense that,

10  where guideline compliant sentences were imposed for very

11  similar facts.

12    To give but three examples, *U.S. versus Bridget*

13  *Coates*, 22-CR-73, that was a fraud that similarly involved

14  an abuse of trust from a position of trust where a principal

15  embezzled $175,000 from a home school association.  She

16  received a 30-month guideline compliant sentence after a

17  plea.

18    *U.S. versus Aurelia Stanton*, 19-CR-221, an office

19  manager that embezzled $230,000, after a plea receiving a

20  33-month guideline compliant sentence.  And *U.S. versus*

21  *Jessica Lewis*, 19-CR-401, for a bookkeeper that embezzled

22  $364,000, after a plea receiving a 24-month guideline

23  compliant sentence.

24    The need for unwanted disparities means that

25  people like should be treated right.  That is one benefit of

the guidelines is that it creates a fair and consistent

approach to sentencing with the factors that are being

evaluated.

There is no reason that he, after going through

trial, stealing much more, being in a worse position of

trust, should get an even better benefit than those who

admitted responsibility and did something similar if not

worse.

The final and fifth reason is the deterrent

effect. What I want (unintelligible) bear is not just him

but also on others like him. I said at the beginning, in

crime we often see stupid, impulsive, thoughtless decisions

with horrible consequences.

Fraud is different. Fraud involves thought,

planning, careful analysis. If you take the time to plot it

out and the steps not to get caught, that also means you

have to think about what happens if you get caught. And is

the juice worth the squeeze? Are those consequences worth

it?

The credit union community is small. The banking

community is small. There's no doubt that others in his

field will hear about what happened to him, and that will

become part of the calculus. If you just get the slap on

the wrist, well, that's just the analysis about whether it's

worth it as other fraudsters, like him, think through that

1   analysis.

2          Then the other truth is he's going to get out and

3   he's a very smart man, a man who is good with numbers, good

4   with finance, and his natural background is in finance.

5   Even with a work restriction in place as requested by the

6   government for the period of his supervised release, he's

7   going to get out and there's a risk somebody is going to

8   trust him with their money.

9          We need him to know that it's not worth it, not

10  worth it just because he can steal without potentially

11  getting caught.  It's not worth it because, if he did, there

12  are very serious consequences.  And therefore, that betrayal

13  of trust is just not worth the cost.

14         Because of the defendant's choices, the government

15  urges the Court to impose the sentence recommended by the

16  PSR writers, specifically 51 months on all counts to run

17  concurrent followed by three years of supervised release,

18  with an additional work restriction imposed on him during

19  that time, prohibiting him from working in finance or

20  accounting.  A restitution order of $76,069.63 and a

21  forfeiture money order in the same amount.

22         Thank you, Your Honor.

23         THE COURT:  Thank you very much.

24         Ms. Akpan?

25         MS. AKPAN:  Thank you, Your Honor.

1    All right.  I did hand up, before we started, a

2  supplement to my sentencing memo.  It was the email that

3  Florencia Hunt had sent explaining that she had directed the

4  reactivation of the dormant account.  I'm not here to

5  re-litigate the issue, but I realize that I hadn't provided

6  it to the probation office and I wanted it to at least be

7  part of the record.

8    Your Honor, I'd like to start with what the

9  Supreme Court said about *Rita*, which -- excuse me, in the

10  *Rita* case, which is that sentencing is a thorough

11  adversarial testing.  And I, in that spirit, tried to lay

12  out several arguments in the sentencing memo about the

13  guidelines.  I realized that I didn't lay out why or how we

14  got to 12 months in one day.

15    Essentially, when you consider the arbitrariness

16  of the guidelines, which is the focus of what I'm trying to

17  do in the sentencing memo, really our argument is what

18  should be measured here is the actual loss.  And that's the

19  $76,069, where that comes out where the base offense level

20  would be 7 plus the 6.  That's how we got to 13.  That's

21  where the guideline range was 12 to 18 months.

22    Really, I think Your Honor could say that there

23  was really no true difficulty in the transactions.  We're

24  talking about money went from one account into another

25  account.  We're not talking about shell companies that were

1    created here.  So, that's essentially how we got there.

2    There are lots of cases that I cited where the Courts have

3    talked about kind of the arbitrariness of the guidelines.

4         Your Honor, I want to move to another point.  I

5    recalled that, at the end of the case, I'm sure the Court

6    wondered why Mr. Lutamila went to trial.  I do want to state

7    for the record that he definitely had considered the plea

8    agreement but could not abide by the government's theory of

9    the case.

10        And at the end, the jury returned a guilty

11   verdict.  That's true.  But they didn't also agree with the

12   government's theory of the case.  The government counsel and

13   defense counsel did speak with the jurors and noted a couple

14   of things.

15        The jurors did see that that there was a bias that

16   seemed to be present against Mr. Lutamila who was culturally

17   different from his colleagues.  I believe Juror Number 8,

18   who was the foreperson, kind of elaborated on that.

19        I would say that, in the end, the jury was not --

20   did not find that the government's theory of this, you know,

21   he didn't become the CFO so that's why he took the money.

22   They didn't agree with that.

23        One juror did note that clearly -- I did put that

24   in my sentencing memo -- that if the jury instruction had

25   been that he was solely responsible, they could find him not

1    guilty.  But we never disputed the transactions, Your Honor.

2    I want to make that very clear.

3         But when you consider that the government's theory

4    of the case was not what Mr. Lutamila agreed with and when

5    you also consider that we were trying to seek -- we were

6    trying to also do our own investigation, and it appeared to

7    be shut down.

8         For example, I filed requests for subpoenas to

9    gather additional information.  It's never a surprise in a

10   fraud case where there's an employer involved that someone

11   would say that their employer directed them to conduct the

12   transactions.  What we did establish was that Mr. Lutamila

13   did work closely with the CFO, as I laid out in my

14   sentencing memo.

15        Again, we're not here to re-litigate all of that.

16   I just wanted to at least take the opportunity to address

17   the Court's possible concern about why go to trial.  And I

18   think Your Honor could conclude that the decision to go to

19   trial was perhaps also an emotional one as well.  And he

20   sought to have his side of the story to be heard.

21        Your Honor may wonder, well, why not have

22   negotiated that with the government, knowing that that

23   perhaps wouldn't even have resulted in resolution that we

24   were looking for.  Of course Your Honor knows very well

25   that, with plea agreements, we wouldn't have the opportunity

to argue for departures.  We wouldn't have opportunity to
argue for a different Statement of Offense because the
standard is much, much lower.

I do want to speak briefly about Mr. Lutamila's
character.  Simply put, the insinuation that Mr. Lutamila, a
non violent, peaceful person, would do something to harm
others is beyond the veil, Your Honor.  And I also find it
troubling that the witnesses who had lawyers would question
any attorney's right to her client's right to further
investigate the case and obtain information.

In conclusion, Your Honor, again, we are -- our
argument is about the arbitrariness of the guidelines.  I
put forth the 1987 version of the guidelines where it was
mandatory at that time, which was based on the empirical
data that the Sentencing Commission had used at that time.

And even there, I will note that I did state that
the guideline range would have been 21 to 27.  I realize
that I didn't add the levels for the version of the level.
I believe there's two levels that I missed adding there.  So
it would actually come up a little bit higher.

Your Honor, I also want to just generally speak to
what I thought may have also been missing.  I thought that I
had a particular insight to present this to the Court.  I've
had the privilege of representing people from various
backgrounds.  I also used to be an immigration attorney and

most of my client base was African immigrants.

The culture that many people grow up in is not a very American culture where people are engaging and open and show pictures of their family and all that. I say that because, Your Honor, I think that, to the extent that there is this perception of sneakiness or this perception that well, he's not forthcoming with information, should not be used against him.

As I stated, I myself am a child of African immigrants. I know what it was like to grow up in a different culture and it may not be received well, having a unique name, as Mr. Lutamila has a unique name, and also different names. I thought that I would be remiss in at least not bringing that to the Court's attention on his behalf.

I understand that Mr. Lutamila does want to address the Court, Your Honor.

THE COURT: Thank you very much, Ms. Akpan.

Mr. Lutamila, do you wish to speak?

THE DEFENDANT: Yes, sir.

THE COURT: Come on up, please.

THE DEFENDANT: Your Honor, as I stand here this morning, I am wearing a disgraceful label of a felon. The stigma that comes with this label is socially and economically so damaging that it can reduce an otherwise

decent person into an outcast.  It is painful when a
prospective employer decides not to hire you because of that
black mark beside your name.

Nonetheless, because human lives are not a
single-chapter book, I have made a determination that I will
and I must remain positive.  I'm not going to allow myself
to be singularly defined by my current legal entanglements.

Your Honor, in the 30-plus years of my life as a
grown man, I have led a normal life that any law-abiding
citizen leads.  People who know me have known me not only as
a hard-working man, but also as a man of integrity.  These
traits together form the capital that I'm determined to
preserve, even as I navigate these challenging times of my
life.

I cannot be grateful enough to my parents for
raising me to be the man that I have long been known to be.
My mother always challenged me to work incrementally harder.
She used to tell me, "Son, people do not die of hard work.
So just work hard."  My mother's mantra has never left me,
even after my mother has long been gone.

I have embraced it completely.  Even in the heat
of my current legal entanglements, I have done everything
that I can do to be a positive contributor to the society,
single-handedly providing for my family without a blip.

When COVID-19 was ravaging our nation, many people

took an easy route of applying for COVID-19 unemployment
benefits, but I said to myself that I wasn't going to take
that route unless and until I ran out of options to earn a
pay check.

So I continued to be a part of the essential
workers force, giving rides to people who needed a ride to
or from work, a ride to or from their doctor's offices, a
ride to or from grocery stores, et cetera.  Good health is
all I needed to have, and my Creator was, as always, kind
enough to grant it.

Your Honor, I am deeply concerned about the
collateral damage of my incarceration to those who depend on
me.

THE COURT:  If you keep your mask down, I can't
quite hear you.  Do you want to just keep your mask down
when you're talking?

THE DEFENDANT:  Your Honor, I am deeply concerned
about the collateral damage of my incarceration to those who
depend on me.  My youngest son, who is also a U.S. citizen,
is an angel that stands to incur the harshest aspect of the
collateral damage of an incarceration triggered by my
actions.

Unfortunately, I am currently unable to shield him
against this collateral damage.  I can only look to you for
empathy and ways to minimize it.  I wish I didn't make those

transactions.  Thank you.

THE COURT:  I'm sorry.  I didn't hear the last sentence, Ms. Akpan.

MS. AKPAN:  Your Honor, I'm sorry, I know that Mr. Lutamila is quite nervous and emotional.  So what he said was that he wished that he did not make those transactions.  Obviously, his focus is on his family, especially his youngest son.

And if I may, Your Honor, just kind of elaborate that Mr. Lutamila did provide a written copy and I didn't know whether -- I can have it reprinted and also added.  But essentially, Your Honor, Mr. Lutamila -- it's fairly consistent actually with a lot of clients that I used to represent in my former life as an immigration attorney where all the focus is on hard work and essentially nothing else to provide for his family which is the focus here.

I think the Court, the government has also acknowledged that we're not talking about these transactions having been sent to Tanzania to fund his family or anything like that.  But what he is addressing here, Your Honor, obviously, he's remorseful and wishes that the transactions had not taken place.

I would ask the Court to put in context what he's saying with kind of his cultural upbringing, so there is some references to those, but the point is what he is saying

 1    is that he is remorseful and wishes that he hadn't done what

 2    he had done.

 3            In addition to that, the collateral damage is

 4    going to be his young son who is living in Tanzania, who

 5    relies on him, who he sees, video calls every day.  And it's

 6    for that reason that he's asking for you to take empathy on

 7    him and give him a lower sentence, Your Honor.

 8            THE COURT:  Okay.  Thank you very much.

 9            All right.  So everyone agrees here the guidelines

10    are 51 to 63 months.  I'm entirely cognizant of the 3553(a)

11    factors, which I don't need to list here.

12            There are a number of issues that are in the

13    forefront of my mind as I consider sentencing.  And I think

14    that Ms. Akpan has attempted to explain why Mr. Lutamila

15    went to trial in this case.

16            Again, I want to make clear that everyone has the

17    right to a trial, that nobody is forced to plead.  There is

18    no tax on going the trial, that that is everyone's right and

19    does not need to be explained.

20            That said, there really was no defense to this.

21    And that's not because Mr. Akpan isn't a very skilled

22    lawyer.  In fact, I think she made what little there was to

23    be made of a defense, and to the extent the jurors had

24    questions about motives, I think those were based on

25    arguments that Ms. Akpan made but that I certainly found

were not convincing in the evidence had I been a juror.

So at the end of the day, there really was just no explanation. I think, and I haven't heard one here today either that I just don't understand, Mr. Lutamila, how you could have done this.

I mean, again, the government says, all of its witnesses and people who spoke today say and Ms. Akpan has said that you had a really upstanding life, that you were someone who came from very little and, by dint of hard work, achieved a great deal of success at the bank and were liked at the bank, were respected at the bank. And I believe that certainly the leadership at the bank attempted to help you and work with you.

Now, Ms. Akpan notes cultural differences and I can't discount those. I don't know what role they played or didn't play. I think Ms. Akpan knows better than I, having represented those folks in her prior career and having been a child of immigrants from that part of the world as well.

But I just sat through the trial wondering how you could have done this and why you could have done this. Again, the government makes a lot of good points, and they certainly fully convinced me at trial of everything in their theory.

But as Ms. Jackson even says today, this was not a crime of need. This wasn't money that you needed to send to

relatives that you needed to, because you were in debt, that
you bought stocks with most of the money.  It's just a crime
of greed.  I don't see what else it is.

I also agreed with the government that your lack
of remorse throughout this -- and, again, I don't mean just
going to trial.  You're absolutely entitled to go to trial,
but your interactions with people at the bank while you were
stealing money from them and still insisting on unreasonable
severance or bonus while you were taking money from them, it
just is so brazen to me.

I also agree with the government this was a
calculated and involved crime.  It wasn't a crime of
impulse, and I'm certainly glad that the money was
recovered, in large part, except for the $76,000.

But I don't agree with the defense that that means
that that's the number that I should be focused on, because
that would equate somebody who stole much more money but was
fortunately stopped with someone who stole a lesser amount.

So at the end of the day, I have decided the
appropriate sentence here is 44 months.  That's a little bit
below the guidelines.  I think, in part, that's to reward
you for your upstanding life up to this point, also to make
sure that sentencing disparities here are appropriate.

The *Han* case that the government points out was a
trial in front of me in which a lot more money was involved,

and I don't believe you should be given a sentence more than that defendant who received 48 months.  So this, to me, is the correct amount.

It's a steep sentence.  I know it's a steep sentence, but that's what the crime deserves here.  And that's what the victims have suffered and just the fact that I find it a crime of greed, a brazen crime and one without remorse.

So I sentence the defendant to concurrent terms of 44 months, which is 3 years and 8 months, on Counts I through XXI, followed by concurrent terms of 36 months of supervised release on each count; $2100 of special assessment is $100 for each count.

While on supervision, you must abide by the following mandatory conditions.  You also must follow the standard conditions.  The mandatory conditions include not committing other crimes, not unlawfully possessing controlled substances, cooperating in the collection of DNA and restitution of the 76,000.

I also agree that you must not work in any type of employment in which you have access to financial records or accounts without the prior approval of probation, that you shall make the financial disclosures, including income tax returns and release of credit information and information about business or finances until restitution is satisfied.

1          And you're prohibited from incurring new credit

2     charges, opening additional lines of credit or negotiating

3     financial contracts without approval of probation.  We'll

4     have a reentry progress hearing within 60 days of release.

5     I waive a fine, and the amount of restitution to Travelers

6     Casualty and Surety is $76,069.63.

7          You have the right to appeal the verdict and

8     sentence.  If you choose to appeal, you must file any appeal

9     within 14 days after the entry of judgment.  If you're

10    unable to afford the cost of appeal, you may request

11    permission to file without cost.

12          Do you understand that?

13          MS. AKPAN:  Yes, Your Honor.  That's understood.

14          THE COURT:  In addition, you have the right to

15    challenge the conviction entered or sentence imposed if new

16    and currently unavailable information becomes available or

17    on a claim you received ineffective assistance of counsel in

18    entering the plea or in connection with sentencing.

19          Once again, if you're unable to afford the cost of

20    appeal, you may request permission from me to file without

21    cost.

22          Do you understand that?

23          MS. AKPAN:  Yes, Your Honor.

24          THE COURT:  Any recommendation, Ms. Akpan, for a

25    facility?

 1          MS. AKPAN:  No, Your Honor.  We would ask for a

 2     low security facility, but I think that's a BOP

 3     determination.  I realize I didn't ask the Court on the

 4     restitution and forfeiture issue that whatever forfeiture be

 5     subtracted from restitution and vice versa.

 6          THE COURT:  I think that they're independent.

 7     They're imposed independently.  If, once one is made, I

 8     assume the other will be voided.  But I think that, right

 9     now, that I think I have to impose them independently.

10          MS. AKPAN:  Your Honor, I want to be clear what my

11     request is.  I do understand that the government can ask for

12     both.  We would just ask that, with the 76 -- that it not be

13     a double 76,000, that one be subtracted from the other.  I

14     think the Court could --

15          THE COURT:  I think that's what happens.  Once the

16     money is paid, the other is waived.  But if that doesn't

17     happen, you may certainly seek my intervention.

18          MS. AKPAN:  Thank you, Your Honor.

19          THE COURT:  Are you seeking self-surrender?

20          MS. AKPAN:  Yes, Your Honor.  We are.

21          THE COURT:  In what timeframe?

22          MS. AKPAN:  We would leave it up to the

23     determination of the Bureau of Prisons.

24          THE COURT:  Okay.  All right.

25          MS. AKPAN:  I think that takes a few weeks.

1          THE COURT:  Okay.  So I'll just say that

2    self-surrender when directed by the Bureau of Prisons.

3          MS. AKPAN:  Yes, Your Honor.

4          THE COURT:  Any objection by the government?

5          MS. JACKSON:  No, Your Honor.

6          THE COURT:  Anything else?  Any other objections

7    to the sentence imposed not already on the record?

8    Ms. Akpan?

9          MS. AKPAN:  Your Honor, not other than what I've

10   already enlisted on the record.

11         THE COURT:  Ms. Jackson?

12         MS. JACKSON:  Is Your Honor also issuing the money

13   judgment forfeiture order in the amount of $76,069.63?

14         THE COURT:  Yes.

15         MS. JACKSON:  Thank you.

16         THE COURT:  All right.  I'll waive any interest.

17         Anything else from probation?

18         SPEAKER 4:  No, Your Honor.

19         THE COURT:  All right.  Thank you very much.  Good

20   luck to you, Mr. Lutamila.

21         MS. AKPAN:  Thank you, Your Honor.

22         (Proceedings concluded at 12:10 P.M.)

23

24

25

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____     2-15-23
Lisa Walker Griffith, RPR                    Date